**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PACIFIC INSURANCE COMPANY,
Plaintiff-Appellee,

v.

AMERICAN NATIONAL FIRE INSURANCE

COMPANY,
Defendant-Appellant,

RAIL LINK, INCORPORATED,
Defendant-Appellee.

No. 96-2468

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CA-96-22)

Argued: May 7, 1998

Decided: July 7, 1998

Before ERVIN and HAMILTON, Circuit Judges, and BLAKE,
United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by published opinion. Judge Hamilton wrote the opinion, in
which Judge Ervin and Judge Blake joined.

_____

**COUNSEL**

**ARGUED:** William Henry Shewmake, SHEWMAKE, BARONIAN
& PARKINSON, Richmond, Virginia, for Appellant. Scott L. Carey,

BATES, MECKLER, BULGER & TILSON, Chicago, Illinois, for Appellee Pacific Insurance; Gary Joseph Spahn, MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellee Rail Link. **ON BRIEF:** Samuel Baronian, Jr., SHEWMAKE, BARONIAN & PARKINSON, Richmond, Virginia, for Appellant. Monica T. Sullivan, BATES, MECKLER, BULGER & TILSON, Chicago, Illinois; John H. O'Brion, Jr., COWAN & OWEN, P.C., Richmond, Virginia, for Appellee Pacific Insurance. Robert A. Angle, MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellee Rail Link.

_____

**OPINION**

HAMILTON, Circuit Judge:

American National Fire Insurance Company (American National) appeals the district court's entry of judgment in favor of Pacific Insurance Company (Pacific) in this dispute involving which company's insurance policy, issued to the insured, Rail Link, Inc. (Rail Link), covers the settled claim of Charles Womack, a former employee of Rail Link. Because we hold that the district court did not abuse its discretion in reversing its previous entry of judgment in American National's favor and properly granted judgment on the pleadings to Pacific, we affirm.

I.

Rail Link is a railroad company that provides switching operations at various manufacturing plants. Rail Link also provides other railroad services to some of the companies it serves, including leasing and maintaining railroad engines, maintaining and repairing railroad tracks, and cleaning boxcars. In addition to providing contractual switching services for various companies and manufacturers, Rail Link is also the parent of two wholly-owned subsidiary corporations that operate "shortline" railroads. These subsidiaries operate short distance railroad connections in North Carolina and Virginia. Rail Link's president, James Benz, and its general manager, William Jasper, are the sole officers and directors of Rail Link's shortline subsidiaries.

2

At all times relevant to this litigation, Rail Link maintained three liability insurance policies. First, Rail Link purchased a $500,000 liability policy from the Hartford Insurance Company (the Hartford Policy). Second, Rail Link purchased a $5 million comprehensive railroad liability policy (the Pacific Policy) from Pacific. Third, Rail Link purchased a $4 million excess liability policy (the American National Policy) from American National.

Several provisions of the Pacific Policy and the American National Policy are pertinent to this appeal. First, the Pacific Policy contains an exclusion, known as Exclusion F, which states:

> This policy does not apply to:
>
> . . .
>
> F. Any liability imposed on the Insured under any of the following:
>
> 1. the Employees' Retirement Income Security Act (ERISA) of 1974 as now or hereafter amended;
>
> 2. any uninsured motorists, underinsured motorists, automobile no-fault or first party personal injury law;
>
> 3. any workers compensation, employers liability (but this does not apply to the Federal Employers' Liability Act; see Employers Liability definition), occupational disease, unemployment compensation, retirement or disability benefits law or statute; or
>
> 4. any law similar to 1., 2., or 3. above.

(J.A. 49). The Pacific Policy also defines "Employer's Liability" as "liability imposed on the Insured for Bodily Injury sustained by employees of the Insured in the course of their employment under the Federal Employers Liability Act, U.S. Code (1970) Title 45, Chapter 2, Sections 51-60 and as amended." (J.A. 63).

3

With respect to the American National Policy, it specifically incorporates certain scheduled underlying policies, including the Hartford Policy. The Hartford Policy and, therefore, the American National Policy exclude claims brought pursuant to the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51-60, providing that "[t]his insurance does not cover: . . . bodily injury to any person in work subject to the Federal Employer's Liability Act . . ., any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws." (J.A. 114). The American National Policy also provides that American National is not required "to assume charge of the settlement or defense of any claim, suit or proceeding against [the insured]." (J.A. 76).

On January 14, 1995, Womack slipped from a railcar while performing switching operations and suffered catastrophic injuries, including multiple amputations. The injury occurred at a Lubrizol, Inc. plant in Texas, and Womack subsequently filed suit against Rail Link and others in a diversity action in the United States District Court for the Southern District of Texas under the Texas Railroad Liability Act (TRLA), Tex. Rev. Civ. Stat., Art. 6432-6443 (the Underlying Action). Womack sought $52 million in damages under the TRLA; Womack did not assert a claim under FELA. Rail Link subsequently reported the claim to its insurers, including Pacific and American National. Because the Hartford Policy was the primary policy, the defense of the Underlying Action was not tendered to either Pacific or American National.

Rail Link and its insurers then attempted to negotiate a settlement of Womack's claim. During the course of the settlement negotiations, however, a dispute arose over which insurer's policy offered coverage for the Underlying Action. As a result of this dispute, on January 19, 1996, Pacific filed this diversity action in the United States District Court for the Eastern District of Virginia against Rail Link and American National, seeking a declaratory judgment as to which company's policy covered the Womack accident. In its complaint, Pacific alleged that it was not liable for covering the Underlying Action because it did not provide any coverage for any accident arising under the TRLA. American National filed an answer, maintaining that its policy also did not provide coverage for the Womack incident.

4

In February 1996, the district court held a settlement conference in which all of the parties to the Underlying Action participated, including Womack's attorneys. Ultimately, the parties agreed to settle the Underlying Action for $4.3 million. The entire employer's liability limit of $500,000 under the Hartford policy was paid in connection with the settlement, while American National and Pacific each agreed to pay $1.86 million with a reservation of rights against the other to litigate which insurer's policy covered the Underlying Action. The terms of the settlement were recorded before the district court by a court reporter, and in memorializing the reservation of rights agreement between Pacific and American National, counsel for American National stated:

> The payments by Pacific and American National Fire Insurance Company are made with the understanding and agreement between them that Pacific and American National agree that they are reserving their rights against each other and agree to litigate post the settlement in the Womack case as between themselves, that they will litigate the various issues of coverage under their respective policies.

> Secondly, they agree that with respect to the applicability of exclusion under Pacific's policy, that issue would be preserved, and if determined that that exclusion applies to Rail Link, Inc. for coverage for the Womack action in settlement, American National will be obligated to reimburse Pacific.

> Thirdly, the above-stated stipulation with regard to the exclusion would not apply if somehow American National was determined not to owe coverage to Rail Link for the Womack action in settlement.

> In the event that Pacific and American National were determined to both provide coverage to Rail Link for the Womack action and settlement, the issue of priority as between their coverage is agreed to be decided and agreed to effect a reimbursement to carry out the final judicial determination of that issue.

5

(J.A. 181-82).

After the settlement of the Underlying Action, Pacific amended its complaint to incorporate the terms of the settlement agreement. In response to Pacific's amended complaint, American National filed an amended answer, a counterclaim against Pacific, and a cross-claim against Rail Link, seeking a declaration that American National had no obligation to indemnify Rail Link for liability in the Underlying Action. Because Pacific and American National agreed not to seek reimbursement from Rail Link, Rail Link remained only a nominal party to the declaratory judgment action and had no active role in the litigation.

On July 23, 1996, Pacific moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). In its motion and memorandum in support of its motion, Pacific argued that the Pacific Policy provided no coverage for the Underlying Action, while the American National Policy did provide coverage, because the Underlying Action was brought under the TRLA, rather than FELA, and the Pacific Policy excluded all employers' liability claims except those asserted under FELA. American National opposed Pacific's motion and argued that, because of an ambiguity in the Pacific Policy, Pacific was liable for Womack's TRLA claims asserted in the Underlying Action. American National did not argue that the Underlying Action could have been or should have been brought under FELA.

On August 21, 1996, the district court granted Pacific's motion for judgment on the pleadings as to Count I of the complaint, agreeing with Pacific that its policy excluded coverage because the Underlying Action was brought under the TRLA. On September 13, 1996, the district court held a hearing to clarify whether its August 21 order granting Pacific's motion for judgment on the pleadings disposed of the case. During that hearing, for the first time, American National argued that FELA preempted Womack's claims under the TRLA, making the Underlying Action a FELA case, not a TRLA case, and rendering the Pacific Policy applicable and not the American National Policy.[1]

_____

[1] Although American National briefly mentioned the applicability of FELA at a hearing held on August 15, 1996 concerning Pacific's motion

6

On September 20, 1996, the district court entered an order holding that its August 21 order granting Pacific judgment on the pleadings as to Count I of the complaint mooted all other counts of the complaint. The district court therefore dismissed the action.

In response to the district court's order, American National filed a notice of appeal. In its notice of appeal, American National identified the district court's failure to rule on the FELA question as one of the appealable issues.

On October 3, 1996, Pacific filed a motion to amend the judgment to request monetary damages consistent with the declaratory relief, pursuant to Federal Rule of Civil Procedure 59(e). Specifically, Pacific requested judgment in its favor in the amount of $1,861,331.38, plus pre-judgment interest and allowable costs, representing the amount that American National had agreed to reimburse Pacific once the coverage issues were resolved in Pacific's favor.

In response to Pacific's motion to amend the judgment, American National argued that an award of damages to Pacific was inappropriate because Pacific had not established that FELA did not preempt Womack's TRLA claims, such that Pacific would be liable for coverage. American National asserted that Pacific's avenue for relief was appeal and requested that Pacific's motion be denied. Alternatively, American National requested that a trial on the merits on the applicability of FELA to the Underlying Action be held by the district court.

In support of its opposition to Pacific's motion to amend the judgment, American National filed the affidavit of its director of commercial liability claims, James Danehy, who handled the Womack claim on behalf of American National. In his affidavit, Danehy stated that because American National did not approve of the way Rail Link was handling the defense of the Womack claim, he agreed, on behalf of American National, to enter into the settlement agreement on February 15, 1996. According to Danehy, under the terms of the agreement

_____

for judgment on the pleadings, American National did not argue that FELA preempted Womack's claims under the TRLA at that hearing or at any time prior to the district court's entry of judgment on the pleadings in favor of Pacific.

7

and in consideration for American National's payment of $1.86 million, the parties agreed that the insurance carriers could litigate all legal and factual issues concerning the insurance coverage, including whether FELA applied to the Underlying Action and was therefore a defense to coverage under the American National Policy. Danehy stated further that this total reservation was important to American National because it permitted American National to raise and pursue defenses and issues that Rail Link and Hartford had no interest and/or incentive in pursuing.

On December 16, 1996, the district court entered a memorandum opinion and order denying Pacific's motion to amend the judgment and ordering the parties to brief and argue the applicability of FELA to the Underlying Action. In its memorandum opinion, the district court stated that it had not fully settled the issue of liability when it granted Pacific's motion for judgment on the pleadings and that if FELA applied to preempt Womack's claim under the TRLA, the American National Policy would not cover the liability, while the Pacific Policy would. The district court stated further that after examining the language of the settlement conference and considering the representations that the parties made during the various hearings before the district court, it found that American National and Pacific left all issues of coverage open, including whether FELA preempted Womack's claim. The district court concluded that it would deny Pacific's motion to amend the judgment and asked the parties to address the FELA coverage issue in written briefs.

Pacific and American National subsequently filed briefs on the issue, while Rail Link responded only to discovery requests propounded by American National, in which Rail Link denied that it was subject to FELA or that it had maintained its subsidiaries in an effort to circumvent FELA.[2] Without hearing oral argument on the matter,

_____

[2] In order to establish that FELA preempted Womack's claims under the TRLA, American National had to establish that Rail Link could be held liable under FELA as a common carrier by railroad through the actions of its subsidiaries. See 45 U.S.C.§ 51. To this end, American National argued that the shortline subsidiaries were the "alter-ego" of Rail Link, such that their acts could be imputed to Rail Link, and that Rail Link established the shortline subsidiaries in an effort to circumvent FELA.

8

on July 30, 1997, the district court entered a memorandum opinion and order in which it held that FELA applied to preempt Womack's claim under the TRLA because Rail Link operated as a common carrier by railroad, engaged in interstate commerce, and Womack's duties touched upon interstate commerce. With respect to the applicability of FELA to Rail Link's operations, the district court found that the activities of Rail Link's shortline subsidiaries could be imputed to Rail Link because it owned and controlled the subsidiaries completely and, therefore, Rail Link could be considered to be a common carrier. The district court found further that Rail Link created the subsidiaries in an effort to circumvent FELA, conduct prohibited by FELA. Finally, the district court found that Womack's duties affected interstate commerce in that the Lubrizol plant, where Womack was working, received products from other states and shipped them out of the state, such that Womack's duties touched upon interstate commerce. The district court concluded that FELA preempted Womack's TRLA claims in the Underlying Action and that because the Pacific Policy included coverage for claims asserted under the FELA, Pacific was liable in the amount of $1.86 million to American National.

On August 11, 1997, American National moved the district court for pre-judgment interest. On August 13, 1997, Pacific filed a motion pursuant to Federal Rule of Civil Procedure 59(e) to reconsider the district court's July 30 order granting judgment in American National's favor. In its Rule 59(e) motion, Pacific argued that the district court should never have considered the FELA issue because the district court was not permitted to look beyond the pleadings in the Underlying Action to decide which policy covered the Womack incident and, since Womack asserted claims only under the TRLA, Rail Link was only subject to liability under the TRLA when the claim was settled. Although only a nominal party, on August 11, 1997, Rail Link also filed a motion to alter or amend the judgment under Rule 59(e). In its motion, Rail Link argued that the district court's decision was unsupported by the facts and the evidence and requested that the district court exercise its discretion to vacate its order to enable the parties to fully develop the factual record on the applicability of FELA to Rail Link's operations.

On November 10, 1997, the district court entered another memorandum and order granting Pacific's motion to reverse its earlier order

of July 30, 1997 and entering judgment in favor of Pacific in the amount of $1.86 million plus pre-judgment and post-judgment interest. In its opinion, the district court noted, first, that one of the grounds on which a Rule 59(e) motion could be granted was to correct a clear error of law or to prevent a manifest injustice. The district court then held that it had made such a clear error of law, one which would result in manifest injustice, when it considered and decided the applicability of FELA to Womack's claim notwithstanding the judgment already entered in Pacific's favor in September 1996. The district court noted that the only motion before the court at the time it decided to rule on the FELA issue was Pacific's motion to amend the judgment to include a monetary award. The district court then held that it should not have considered and decided the applicability of FELA to the Underlying Action because it did not have before it any pleading or motion upon which relief for American National could have been granted. The district court also held that it had erred in rendering judgment in favor of American National because in considering which company's policy covered the Underlying Action, the district court should have confined itself to deciding whether the claim as settled was covered by the policy, not the merit of the Underlying Action or the applicability of FELA to it, where the settled claim was a claim pursued under the TRLA, not FELA. Finally, the district court held that it had erred in holding that the parties reserved the right to litigate the applicability of FELA to the Underlying Action in the settlement agreement.

Therefore, the district court reversed its July 1997 judgment in favor of American National and entered judgment in favor of Pacific in the amount of $1.86 million plus pre- and post-judgment interest. In addition, the district court held that Rail Link's motion to alter or amend the judgment was moot, as was American National's motion to amend the judgment. The district court then dismissed the action.

On December 5, 1997, American National filed an amended notice of appeal. On appeal, American National argues: (1) that the district court erred in granting Pacific's Rule 59(e) motion to alter or amend the July 30, 1997 judgment entered in American National's favor; and (2) that the district court erred initially when it granted Pacific's motion for judgment on the pleadings, holding that the Pacific Policy

10

excluded coverage for liability imposed under the TRLA. We consider each asserted error in turn.

## II.

American National first argues that the district court erred in reversing its July 30, 1997 judgment in favor of American National, holding that it was procedurally improper for the district court to have considered American National's FELA argument and ultimately to have entered judgment in favor of American National in the absence of any motion by American National requesting relief. We review a district court's decision on a motion to alter or amend the judgment under Rule 59(e) for abuse of discretion. See EEOC v. Lockheed Martin Corp., Aero & Naval Sys., 116 F.3d 110, 112 (4th Cir. 1997); Collison v. Internat'l Chem. Workers Union, 34 F.3d 233, 236 (4th Cir. 1994). A district court abuses its discretion when it fails to take relevant factors intended to guide its discretion into account or when it acts on the basis of "legal or factual misapprehensions" respecting those factors. See James v. Jacobson, 6 F.3d 233, 242 (4th Cir. 1993).

Although Rule 59(e) does not itself provide a standard under which a district court may grant a motion to alter or amend a judgment, we have previously recognized that there are three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. See Lockheed Martin Corp., 116 F.3d at 112; Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). Thus, the rule permits a district court to correct its own errors, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995). Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance. See Russell, 51 F.3d at 749; Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 330 (8th Cir. 1993); FDIC v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992); Simon v. United States , 891 F.2d 1154, 1159 (5th Cir. 1990); see also In re: Reese, 91 F.3d 37, 39 (7th Cir. 1996) ("A motion under Rule 59(e) is not authorized`to enable a party to

11

complete presenting his case after the court has ruled against him.'") (quoting Frietsch v. Refco, Inc., 56 F.3d 825, 828 (7th Cir. 1995)); 11 Wright et al., Federal Practice and Procedure § 2810.1, at 127-28 (2d ed. 1995) ("The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."). Similarly, if a party relies on newly discovered evidence in its Rule 59(e) motion, the party "must produce a `legitimate justification for not presenting' the evidence during the earlier proceeding." Small v. Hunt, 98 F.3d 789, 798 (4th Cir. 1996) (quoting RGI, Inc. v. Unified Indus., Inc., 963 F.2d 658, 662 (4th Cir. 1992)). In general "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." Wright et al., supra, § 2810.1, at 124.

In this case, the district court stated in its November 10, 1997 order granting Pacific's second Rule 59(e) motion that it was relying on the third ground for granting such a motion: to correct a clear error of law or prevent manifest injustice. According to the district court, it had clearly erred when it entered judgment in favor of American National on July 30, 1997 because at the time it denied Pacific's first Rule 59(e) motion to amend the judgment to include a monetary award and permitted American National to argue the applicability of FELA to Womack's claims, there was no motion before the court requesting such relief. The issue, then, is whether the district court abused its discretion in holding that the third basis for relief under Rule 59(e)--that the district court had committed a clear error of law or that the judgment would effect manifest injustice on the moving party--was satisfied. For two reasons, we do not believe that the district court abused its discretion.

First, as noted above, at the time the district court denied Pacific's first Rule 59(e) motion to amend the judgment in Pacific's favor to include a monetary award on the basis that American National should be permitted to argue the applicability of FELA to the Underlying Action, American National had not filed any motion requesting relief from the district court. Instead, American National had noted an appeal from the district court's judgment in Pacific's favor and took the position in its brief in opposition to Pacific's motion to amend that the appropriate forum for Pacific's arguments was this court on appeal, not the district court. While American National alternatively

12

argued in its opposition that it was entitled to a jury trial on the applicability of FELA to the Underlying Action, it never filed a motion requesting that relief. In granting American National relief, notwithstanding the absence of a motion, the district court, in effect, treated American National's opposition to Pacific's motion to amend as a Rule 59(e) motion to alter or amend the judgment filed by American National. Even if a district court could consider an opposition to a Rule 59(e) motion to be a formal request for relief under Rule 59(e), American National's opposition was not filed within ten days of the September 20, 1996 order of judgment in favor of Pacific and, therefore, was not timely filed for purposes of the rule. See Fed. R. Civ. P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.").

Second, the argument raised by American National relating to the applicability of FELA to the Underlying Action could not be appropriately considered in the context of a motion to alter or amend the judgment because it was not timely raised. As set forth above, Rule 59(e) may not be used to raise new arguments or present novel legal theories that could have been raised prior to judgment. Throughout the pendency of the action in the district court prior to judgment, American National defended Pacific's action on the basis that the Pacific Policy, in fact, afforded coverage of Womack's TRLA claims. Despite Pacific's repeated statements acknowledging that the Pacific Policy extended coverage to claims asserted under FELA, but not to any other employer liability claims, at no time prior to the district court's grant of judgment on the pleadings to Pacific on Count I of the complaint did American National assert that FELA applied to the Underlying Action. Indeed, the first time American National raised the FELA issue at all was during a hearing on a motion to clarify the district court's August 21, 1996 order granting Pacific's motion for judgment on the pleadings. Although this hearing occurred prior to the district court's September 20, 1996 dismissal of the action, it occurred after the district court entered judgment in favor of Pacific on Count I of the complaint, in which Pacific requested a declaration that the American National Policy covered the Underlying Action, not the Pacific Policy. Thus, all of the issues of coverage had effectively been resolved, as the court subsequently declared in its September 1996 order of dismissal. In addition, American National failed to file any written document containing its FELA argument until after the

13

district court entered final judgment in favor of Pacific on September 20, 1996.

Finally, we note that in opposing Pacific's motion to amend the judgment to include a monetary award, American National submitted and relied upon the affidavit of James Danehy, its director of commercial liability claims. In his affidavit, Danehy stated that the parties agreed in the settlement agreement that the insurance carriers could litigate all legal and factual issues concerning the insurance coverage, including whether FELA applied to the Underlying Action. As set forth above, however, a party may not seek to alter a previously-entered judgment by relying on new evidence, unless the party "produce[s] a `legitimate justification for not presenting' the evidence during the earlier proceeding." Small, 98 F.3d at 798 (citation omitted). Since American National did not produce a "legitimate justification" for failing to submit the Danehy affidavit earlier, this evidence could not provide the basis for the district court's decision to reconsider its earlier judgment in favor of Pacific.

In light of the absence of a motion by American National requesting relief under Rule 59(e) and the overwhelming authority that a party should not be permitted to raise new arguments or legal theories of liability on a motion to alter or amend the judgment under Rule 59(e), the district court did not abuse its discretion in subsequently holding that its decision to permit American National to raise the FELA issue in the context of its opposition to Pacific's motion to amend, after all issues of coverage had been considered and decided by the district court, was clear error. Accordingly, the district court did not abuse its discretion in granting Pacific's motion to alter or amend the district court's July 30, 1997 judgment in favor of American National.**3**

_____

**3** Because we affirm the district court's grant of Pacific's Rule 59(e) motion to alter or amend the July 30, 1997 judgment in American National's favor on the basis that the district court did not abuse its discretion in holding that it had clearly erred as a matter of law in rendering judgment in American National's favor, we need not address the district court's other justifications for granting Pacific's motion: (1) that it erred in entering judgment in favor of American National because the only relevant issue was whether Womack's claims against Rail Link, as settled

14

III.

American National also argues on appeal that the district court erred when it held, in response to Pacific's motion for judgment on the pleadings pursuant to Rule 12(c), that the Pacific Policy excluded coverage for all claims brought under the TRLA. We review a district court's decision to grant a motion for judgment on the pleadings de novo. See Gutierrez v. Peters, 111 F.3d 1364, 1368 (7th Cir. 1997); see also Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997) ("We review de novo the district court's dismissal of the complaint.").

In interpreting the Pacific Policy, we begin with the language of the contract itself. Thus, "[w]here an agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. This is so because the writing is the repository of the final agreement of the parties."**4** Lerner v. Gudelsky Co., 334 S.E.2d 579, 584 (Va. 1985); see also Schneider v. Continental Cas. Co., 989 F.2d 728, 731 (4th Cir. 1993) (quoting Lerner and applying plain meaning rule in interpretation of insurance policy). Virginia strictly adheres to the "plain meaning" rule, entitling the parties to rely on the express terms of the written agreement. See Lerner, 334 S.E.2d at 584. Language in a contract is ambiguous "`when it may be understood in more than one way or when it refers to two or more things at the same time.'" Granite State Ins. Co. v. Bottoms, 415 S.E.2d 131, 134 (Va. 1992) (citation omitted).

As set forth above, the Pacific Policy contained an exclusion of coverage, known as Exclusion F, as follows:

> This policy does not apply to:

_____

under the TRLA, were covered under the respective policies; and (2) that it erred in entering judgment in favor of American National because the parties did not reserve the right to litigate the FELA preemption issue in the Settlement Agreement.

**4** All parties agree that Virginia law applies to the interpretation of the insurance policies.

15

. . .

    F. Any liability imposed on the Insured under any of the following:

        1. the Employees' Retirement Income Security Act (ERISA) of 1974 as now or hereafter amended;

        2. any uninsured motorists, underinsured motorists, automobile no-fault or first party personal injury law;

        3. any workers compensation, employers liability (but this does not apply to the Federal Employers' Liability Act; see Employers Liability definition), occupational disease, unemployment compensation, retirement or disability benefits law or statute; or

        4. any law similar to 1., 2., or 3. above.

(J.A. 49). American National argues that this exclusion is ambiguous and, therefore, must be construed against Pacific. See Bottoms, 415 S.E.2d at 134 (ambiguous language in an insurance policy will be construed to grant coverage, rather than withhold it). First, American National argues that subsection (4) of Exclusion F operates to include coverage of liability imposed under "any law similar" to FELA. In reaching this conclusion, American National first notes, as Pacific concedes, that subsection (3) of the exclusion specifically includes coverage of any liability imposed on Rail Link, the insured, under FELA. Because subsection (4) of the exclusion references "any law similar" to the laws denoted in subsections (1), (2), or (3), American National argues that subsection (4) has the effect of including within coverage "any law similar" to FELA. Thus, American National would exclude from the exclusion not only liability imposed on Rail Link under FELA, but also, liability imposed on Rail Link under "any law similar" to FELA.

As recognized by the district court in its August 21, 1996 opinion granting Pacific's motion for judgment on the pleadings, this interpretation of the exclusion is not plausible. The plain meaning of subsection (3) of the exclusion is that it generally excludes from coverage

16

any liability imposed on Rail Link under employers' liability laws. Contained within the parentheses, however, is a specific exception to this exclusion for liability imposed under FELA. Thus, subsection (3) permits coverage of liability imposed under FELA but excludes coverage for liability imposed under any other employers' liability law. Subsection (4), in referring to "any law similar to 1, 2, or 3 above," excludes from coverage liability imposed under any law that is similar to the categories of laws listed in subsections (1), (2), or (3). In arguing that this language also refers to the language in subsection (3) contained within the parentheses and, therefore, permits coverage of "any law similar" to FELA, American National ignores the fact that subsection (3) generally excludes liability imposed under employers' liability laws with the language contained within the parentheses specifically excepting from the exclusion liability imposed under FELA. To read subsection (4) as including coverage of liability imposed under any law similar to FELA renders the exception and, therefore, the parentheses denoting the exception meaningless because the effect would be to include within the coverage liability imposed under all employers' liability laws. The district court, then, was correct in holding that the plain language of this provision excludes from coverage all claims of employers' liability but specifically <u>includes</u> coverage for claims brought pursuant to FELA for bodily injury of an employee that occurs during the course of employment.

American National alternatively argues that the policy's failure to define "employers' liability," while defining "Employers' Liability," makes the exclusion ambiguous. We disagree. By defining "Employers' Liability" to refer specifically to claims for bodily injury under FELA, the Pacific Policy has defined one type of employers' liability claim and made that particular type of claim a defined term for purposes of the contract. However, its definition of one particular type of claim as a term of art does not require Pacific to define more specifically the more general category of "employers' liability" claims.

In arguing in favor of finding an ambiguity, American National relies on several Virginia cases, which hold that particular language contained in insurance policies was too ambiguous to constitute the clear exclusion required under Virginia law. These include, for example, <u>American Reliance Ins. Co. v. Mitchell</u>, 385 S.E.2d 583 (Va. 1989), in which the court held that the term "employee" was ambigu-

17

ous, where the insurer argued that a part-time employee constituted an "employee" for purposes of an exclusion pertaining to bodily injury to any "farm employee." See id. at 584, 586. Similarly, in Caldwell v. Transportation Ins. Co., 364 S.E.2d 1 (Va. 1988), the court held that language in an insurance policy purporting to exclude "similar operations" to "mining" and "tunneling" was too ambiguous to permit the exclusion where both similarities and differences were earnestly argued between mining and tunneling, on the one hand, and the activity sought to be excluded, well-drilling, on the other. See id. at 3. Finally, in Smith v. Allstate Ins. Co., 403 S.E.2d 696 (Va. 1991), the court held that the term "incidental business activity" was ambiguous and precluded an interpretation of the contract in the insurer's favor with respect to the exclusion at issue. See id. at 697.

These cases, however, differ from this case in that in each of the cases cited, there was particular language that was difficult to construe because it had more than one meaning in the context of the factual circumstances of the case. In this case, the plain language of the exclusion refers to a broad category of employers' liability laws and excludes any claims brought under those laws, with the exception that claims brought under one employers' liability law, FELA, are included and these claims are then specifically defined as "Employers' Liability" claims. That "employers' liability" refers to more than one type of law does not make it ambiguous as applied to this case because American National cannot contend that the TRLA does not constitute an employers' liability law, for purposes of the general category, and Pacific's definition of the more specific category as referring to FELA only renders the exclusion plain and unambiguous. Therefore, we reject American National's argument that the exclusion for all claims arising out of employers' liability laws is ambiguous and must be construed in favor of coverage. In addition, under the plain terms of the contract, we agree with the district court that the exclusion contained in the Pacific Policy excludes coverage for liability imposed under the TRLA.

IV.

In sum, we hold that the district court did not abuse its discretion in granting Pacific's Rule 59(e) motion to alter or amend the July 30, 1997 judgment rendered in favor of American National in its order of

18

November 10, 1997. Additionally, we hold that the district court properly held, in granting Pacific's motion for judgment on the pleadings as to Count I of the complaint, that the Pacific Policy excludes coverage for liability imposed under the TRLA. Accordingly, the district court's judgment is affirmed.

AFFIRMED

19