**Eddie McCALL, Plaintiff,**

v.

**Lieutenant Dwight WILLIAMS, Sheriff Jack McCrea, and Williamsburg County Sheriff's Department, Defendants.**

**C/A No. 2:97–1798–18.**

United States District Court, D. South Carolina, Charleston Division.

Aug. 16, 1999.

---

William J. Barr, Kingstree, SC, for plaintiff.

Robert King, Florence, SC, for defendant.

## ORDER

NORTON, District Judge.

This action is before the court on Plaintiff's Motion for Reconsideration of this court's grant of summary judgment to Defendants.

■ A "motion for reconsideration" is not recognized by the Federal Rules of Civil Procedure. A motion denominated as such is treated as a motion to alter or amend a judgment pursuant to Rule 59(e). *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir.1993); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2810.1 (1995). Rule 59(e) is an extraordinary remedy that permits the district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate litigation. *See Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). A motion to alter or amend a judgment may be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993). Mere disagreement with how the law is applied does not support a Rule 59(e) motion. *See id.* at 1082.

■ A hearing on this matter will not be scheduled as the arguments are adequately presented in the materials submitted to the court and oral argument would not aid the decisional process. Because Plaintiff's motion addressed only the § 1983 claim against Lieutenant Williams in his individual capacity, this court will do the same. Plaintiff first claims that this court applied the wrong standard in evaluating the qualified immunity claim when it rejected the "objective reasonableness" standard. Plaintiff observes that "[t]he Court should have applied the objective reasonableness test as recognized by *Rowland [v. Perry*, 41 F.3d 167 (4th Cir. 1994) ], and *Wilson [v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ]." (Plaintiff's Memo. in Support of Motion for Reconsideration at 8) Plaintiff misunderstands the analysis this court performed in its previous Order. This court refused to apply the excessive force analysis for qualified immunity that in-volves a freestanding, reasonableness inquiry into the actions of the law enforcement officer and thus makes no distinction between an inquiry on the merits of an excessive force claim and an inquiry on the defense of qualified immunity. *See, e.g., Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994). For the reasons stated in its previous Order, this court continues to reject such an analysis because it differs from the traditional three-prong analysis reaffirmed recently by the Supreme Court, it is inconsistent with the analysis performed in a more recent excessive force case from the Fourth Circuit, and it equates the merits and qualified immunity defenses when the qualified immunity defense grants government officials *greater* protection than a simple defense on the merits. *See Vathekan v. Prince George's County*, 154 F.3d 173, 179–80 (4th Cir.1998) (applying the same three-pronged qualified immunity test in an excessive force case as this court did in its previous Order); *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir.1991) (recognizing the qualified immunity defense in excessive force cases and observing that such a defense "affords government officials greater protection than a simple defense on the merits"). Instead, this court applied the traditional three-pronged test of objective reasonableness, reaffirmed by the United States Supreme Court five days after this court issued its Order. *See Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (applying the traditional three-pronged analysis in a Fourth Amendment qualified immunity context).

■ Plaintiff maintains that his right to be free from the application of handcuffs which were too tight was clearly established on the date of the incident. In his Memorandum in Support of his Motion for Reconsideration, Plaintiff argues that "[u]nder this Court's analysis, an arrestee would be barred from the halls of federal justice if he could not find a case to establish that his type of case had already been decided or established by rule of law."

(Plaintiff's Memo. in Support of his Motion for Reconsideration at 6) This is simply not correct. Even Plaintiff admits at another point in his memorandum that this court's previous Order acknowledged that "'clearly established' include[s] the rights that are already 'specifically adjudicated,' and those rights 'manifestly included within more general applications of the core constitutional principle invoked.'" (Order, dated May 19, 1999) (*quoting Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir.1992)).

The problem with Plaintiff's argument is that he merely states, in a conclusory manner, that "the right to be free from the unreasonable use of handcuffs by officers during an arrest is manifestly included within the more general applications of the core constitutional principle to be free from unreasonable seizure." (Plaintiff's Memo. in Support of his Motion for Reconsideration at 5) Plaintiff cites no case law from which a law enforcement officer could draw by analogy and thus determine that the application of handcuffs that were too tight was manifestly included within the Fourth Amendment right to be free from excessive force. Indeed, Plaintiff does not explain why the application of handcuffs in this manner is any different to any other

use of excessive force. The only way Plaintiff's argument could prevail is if this court were to accept that all use of excessive force is manifestly included within the core constitutional principle that a person has a right to be free from unreasonable seizure. Such a rule would serve to eradicate the need for the particular right to be fact-specific, because the plaintiff could always make the bald assertion that the right at issue is "manifestly included" within the more general right. Because such a rule would violate the fundamental precepts of the qualified immunity doctrine, this court will decline to adopt it.

■ Although Plaintiff did not address this issue in his Motion for Reconsideration, this court is constrained to note that *Wilson* clarified the methodology of qualified immunity and thereby highlighted an error in this court's prior Order. In *Wilson*, the Supreme Court ruled that a district court must first evaluate the merits of a plaintiff's claim to determine if his constitutional rights were violated, before it proceeds to determine whether the right that was violated was clearly established at the time of the incident. *See Wilson*, 526 U.S. at ——–——, 119 S.Ct. at 1697–99.[1]

---

1. The origins of this methodology may be traced back to the Supreme Court's 1991 decision in *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Although many circuits interpreted *Siegert* "as requiring resolution of the merits of the constitutional claim under current law before consideration of the qualified immunity, issue," the Fourth Circuit concluded that "all of these courts have overread, and in so doing misread, *Siegert*." *DiMeglio v. Haines*, 45 F.3d 790, 796, 797 (4th Cir.1995). Three years later, in a footnote, the Supreme Court observed that the policy of avoiding constitutional questions was inapplicable in the context of a qualified immunity analysis because to follow such a policy of deciding only the immunity question would ensure that "standards of official conduct would tend to remain uncertain, to the detriment both of officials and individuals." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998). With the Court's recent decision in *Wilson*, the methodology of assuming, without deciding, that a

constitutional violation occurred has now been clearly rejected.

Analyzing the merits of the constitutional claim in each qualified immunity case will resolve the concerns that this court expressed in footnote thirteen of its previous Order in this case in which it observed that the Fourth Circuit's analysis in qualified immunity cases may lead to the retardation of excessive force jurisprudence. In *Wilson*, the Supreme Court observed that "[d]eciding the constitutional question before addressing the qualified immunity question ... promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at ——, 119 S.Ct. at 1697. Although the officers in *Wilson* were granted the law enforcement equivalent of a "one free bite" when they were found to have violated the plaintiff's constitutional rights and yet were found to be qualifiedly immune, every law enforcement officer in the country is now on notice that "it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a

This court did not take the first step in that analysis. Instead of addressing the merits of Plaintiff's case to determine whether his constitutional rights had been violated, this court assumed, for purposes of the qualified immunity analysis, that Plaintiff could prove that Lieutenant Williams had used excessive force in handcuffing his wrists too tightly. Thus, this court did not evaluate whether the force used was excessive. Although such a failure is now demonstrably legal error, it has no effect on the outcome of this case. Just as the Supreme Court found that the officials in *Wilson* had violated the plaintiff's Fourth Amendment rights, yet they were entitled to qualified immunity because the specific right had not been clearly established at the time of the incident, this court finds that Lieutenant Williams is entitled to qualified immunity, even though, taking the evidence in the light most favorable to Plaintiff, Lieutenant Williams violated Plaintiff's Fourth Amendment right to be free from the use of excessive force.

 Nevertheless, this court will engage in an analysis of the merits of Plaintiff's excessive force claim in order to comply with the Supreme Court's mandate. "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with

it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396, 109 S.Ct. 1865. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Id.* (*quoting Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Such a balancing involves "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." [2] *Id.* Importantly, the " 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the $^{20}/_{20}$ vision of hindsight." *Id.* In other words, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865. With these principles in mind, the court now turns to the particular facts and circumstances of this case, taken in the light most favorable to Plaintiff.

 Considering the severity of the crime, the threat Plaintiff posed to the officers, and the absence of any attempts on his part to resist or evade arrest, Lieutenant Williams used excessive force in

home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant." *Id.* at 1699.

**2.** In his Memorandum in Support of his Motion for Reconsideration, Plaintiff asserts that this court committed error by failing to consider these *Graham* factors in its qualified immunity analysis. Although these factors are

relevant to an analysis of the merits of an excessive force claim, they are not relevant to the qualified immunity analysis. To the extent that the Fourth Circuit has sometimes based its qualified immunity analysis on these factors, instead of following the traditional three-pronged test for qualified immunity, this court finds that such an application of the factors is inconsistent with more recent Fourth Circuit precedent.

handcuffing Plaintiff too tightly. Although Plaintiff and the passenger in his car were stopped by Lieutenant Williams and two other law enforcement officers for suspected illegal drug possession, the other facts of this case demonstrate that the degree of force used was excessive under the circumstances. Plaintiff, a sixty-three year old man at the time of the incident, and a female of unknown age, were stopped by three law enforcement officers on a rural road. According to Plaintiff, he consented to a search of his vehicle and was then told that he was free to go. Plaintiff only returned to the scene moments later because his passenger believed that the officers had wanted her to stay, and not to leave. Upon returning to the scene, they were greeted by a drawn gun pointed at them, demands to get out of the car, and the placement of handcuffs on Plaintiff. At this time, three law enforcement officers were present, one suspect was then placed in handcuffs, while the other was being questioned by the officers. Under these circumstances, and bearing in mind that this incident occurred on a quiet, rural road, and not in a city street where other people might be milling around and could try to intervene or assist the suspect in escaping, the elderly Plaintiff in handcuffs could not have posed a serious threat to the officers warranting a tight application of the handcuffs. Moreover, taking the evidence in the light most favorable to Plaintiff, he did not resist the placement of the handcuffs or attempt to evade arrest or the investigatory stop.[3] Finally, this is not a case in which Plaintiff simply complained that the handcuffs were too tight; instead, Plaintiff has medical evidence demonstrating that he has a "10% impairment of his RUE as a result" of the handcuffs being too tight.[4] Based upon all these circumstances, the court concludes that Lieutenant Williams used excessive force in handcuffing Plaintiff too tightly for fifteen to twenty minutes while the officers questioned the female passenger. However, just as the officers in *Wilson* violated the plaintiff's constitutional rights but were granted qualified immunity, Lieutenant Williams may also take his "one free bite" in this case for the reasons stated in this Order, and in the court's previous Order, dated May 19, 1999. Consequently, engaging in the first step of the analysis, which the Supreme Court has now instructed district courts to perform, does not benefit Plaintiff in this case.[5]

After addressing Plaintiff's arguments and finding them to be without merit, this court denies Plaintiff's Motion for Reconsideration for the reasons set forth above and for those reasons stated in this court's previous Order, dated May 19, 1999.

It is therefore,

**ORDERED,** that Plaintiff's Motion for Reconsideration be **DENIED.**

**AND IT IS SO ORDERED.**

---

3. Defendants evidently disagree with this characterization of the events. Indeed, the outcome of the excessive force claim on the merits could be very different if this case were to reach a jury and the jury believed Lieutenant Williams that Plaintiff fled the scene without authorization. Because Plaintiff may then have been considered a flight risk, a jury could conclude that the increased tightness of the handcuffs was justified under those circumstances. At the summary judgment stage, however, this court must take the evidence in the light most favorable to Plaintiff.

4. This court specifically notes that its ruling in this case does not mean that every time a suspect complains that the handcuffs are too tight, a constitutional violation has occurred. Instead, a determination of whether a constitutional violation has occurred will depend upon the facts and circumstances of each case.

5. The major benefit to engaging in a merits analysis, rather than merely assuming a constitutional violation, is articulated in footnote one of this Order.