UNITED STATES of America,
Plaintiff,

v.

Lorinda J. CHARLES a/k/a Lorinda
Gonzalez, Defendant.

No. 1:98–CV–00177.

United States District Court,
M.D. North Carolina.

Oct. 17, 2002.

GILL P. Beck, Office of U.S. Attorney, Greensboro, NC, for Plaintiff.

William E. Wheeler, Wyatt Early Harris & Wheeler, High Point, NC, for Defendant.

Lorinda J. Charles, High Point, NC, pro se.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This case is now before the Court on the Government's Motion to Alter or Amend Judgment [Doc. # 34], its Supplemental Motion to Alter or Amend Judgment [Doc. # 41], and the Defendant's Application for Fees and Other Expenses [Doc. # 39]. For the reasons set forth below, the Government's motions for Reconsideration are accordingly GRANTED and its Motion for

Judgment in its Favor [Doc. # 34] is DENIED. The Defendant's request for attorneys' fees is DENIED.

## I.

The Defendant, Ms. Lorinda J. Charles, borrowed $2,050.00 to attend the University of Tampa between 1970 and 1972. Ms. Charles contends that in 1973 she repaid the loan in full by mailing a check. The Plaintiff, on the other hand, claims that its records show the Defendant in default as of November 2, 1974. In 1991, Congress retroactively abrogated any statute of limitations applying to student loan collection and thus revived actions regarding any federally insured student loans regardless of the date on which the loans were considered in default. 20 U.S.C. § 1091a(a) (1991). Early in 1998, the Government filed this suit against Ms. Charles, seeking over $3,000 in principal, interest, and fees.

In a Judgment dated April 11, 2000, the Court granted Ms. Charles' Motion for Summary Judgment on the ground that the collection action violated her due process rights. [Doc. # 31]. Relying on *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), the Court found that while retroactively abolishing a statute of limitations is normally permissible, it offends due process when it creates "special hardships or oppressive effects." *Id.* at 316, 65 S.Ct. 1137. Because Ms. Charles disputes that she owes the alleged debt, because crucial records no longer exist, and because of what the Court termed a "lengthy and apparently unjustifiable delay," (Mem. Order [Doc. # 30], at 7–8), between her alleged default and the filing of this suit, the Court found that the retroactive abolition of the statute of limitations caused special hardships in this case. The Government has now moved, pursuant to Federal Rule of Civil Procedure 59, to alter or amend the Judgment.

Rule 59(e) "permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pacific Ins. Co. v. American Nat. Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998) (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995). While Rule 59(e) does not provide a standard under which a district court may alter or amend a judgment, the Fourth Circuit has recognized three grounds on which a district court may alter or amend a previous judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Pacific Ins. Co.,* 148 F.3d at 403. Upon reconsideration, it is determined that the record does not support a finding of summary judgment for either of the parties, that the judgment previously entered should be STRICKEN and that the matter should be calendared for trial at the January 2003 session.

## II.

This case graphically illustrates the difficulties that arise when legislation revives claims that were once barred by a statute of limitations. On one hand, the Government has a legitimate interest in pursuing collection of defaulted student loan debts. It is beyond question that many students with government assured student loans would not have been able to attend or graduate from schools of higher learning without the low interest money made available through federally guaranteed student loan programs. It is also evident from cases that pass through this court that a number of people have not repaid those loans. There is nothing facially unfair or arbitrary with the idea that, having made the money available to citizens at low in-

terest rates, the Government's opportunity to recover it should not be time-barred.

On the other hand, there is an obvious difficulty for a person who repaid a student loan in full and then receives a demand letter, years or even decades after the fact, stating that the loan had never been repaid. People do not keep records indefinitely, especially when there is no apparent purpose to do so. Society is mobile, people move and, in doing so, throw away old papers for which there is no reason to believe there will ever be a use. It is reasonable to believe after paying a debt that if anyone claimed the debt had not been paid, there would be some contact within several years of the time payment was due. In the meantime, memories fade and, as in this case, universities may have purged records relating to payment. Banks that handled the transaction may have been acquired by other banks that were subsequently acquired by still larger banks.

■ The significant question to be answered upon the Government's motion for a reconsideration is whether there was a sufficient showing in this record to support the Court's finding that Ms. Charles' due process rights had been violated. After reconsideration, the Court determines that to make a showing of an "as applied" due process violation, Ms. Charles needs to show more than a bare assertion of payment accompanied by a present inability to retrieve pertinent records.

Several cases have found no "as applied" due process violation and granted summary judgment for the Government based on a defendant's failure to present any "testimony . . . suitable for consideration on summary judgment" that the student loan was repaid. *United States v. Distefano*, 279 F.3d 1241, 1245 (2002); *see also United States v. Brown*, No. 00–1994, 2001 WL 303362 (6th Cir. March 19, 2001); *United States v. Daley*, No. CS–91–0280–JBH, 1992 WL 106799 (E.D.Wash. May 13, 1992). Ms. Charles's case is distinguishable, however, because she has testified under oath that she had paid the loan in full in 1973. Because of her testimony, there certainly is a material issue of fact sufficient to deny the Government's motion for summary judgment.

■ The Court does not question Ms. Charles' subjective good faith belief that she repaid the loan in full in 1973. Her bare assertion, however, is the only evidence of payment in the present record before the Court and is, by itself, insufficient to support a finding of objective good faith. The record raises many questions and contains answers for none of them; perhaps, because memories naturally fade over thirteen [1] or more years, perhaps because the answers have just not made it into the record. For example, in her deposition, Ms. Charles was unable to recall who told her the amount of a final payoff, where the information came from, the name of the bank through which payment was made, or to whom it was mailed. She testified that she believed herself entitled to some loan reduction based upon having taught five years in schools that may have been designated by the Department of Education as being within a class of schools serving low income students.[2] However, she has no knowledge of whether the

---

1. While Ms. Charles does not recall having been contacted by anyone about the debt until 1988, the Government printout shows letters being mailed beginning in September, 1986.

2. The student loan notes signed by Ms. Charles provided in Paragraph III.(4) that

when the loan recipient taught at a school designated by the Commissioner of Education as one with a high concentration of students from low income families, the principal and interest would be reduced by fifteen percent for each complete academic year.

schools in which she taught were ever so designated, and there is no explanation for why, if she fully repaid the debt in 1973 in her first year of teaching, she would be entitled to some reduction for the next four years. If she thought in 1973 that the school system was so designated, why did she elect to pay off the loan when the note would have been reduced fifteen percent in principal and interest for each year of that service?

In addition, the amount of a payoff would have been unusually large for a first year teacher in 1973, the year after she graduated. Where did the money come from? If it was saved, was it kept in an account and where was it deposited? Might that bank still be in business and might records of an account and a withdrawal of the approximate amount owed if paid-off in 1973 be available? If the money was borrowed from a relative, then from whom and might that person have some recollection of the terms or even the event? If not from a relative, then from another financial institution? And is it reasonable to believe a better interest rate was available from another institution so that a person would borrow to completely repay a low interest student loan? Why was it not paid over time according to the loan installment schedule? Finally, Ms. Charles recalls a one time payment. In fact, the record shows payment of $307.50 Could that be what she now recalls as a full payment?

 Several courts have suggested that there are possible cases of "as applied" due process violations when a statute of limitations is removed after some period of time or a statute is passed creating retrospective liability. *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 228, 106 S.Ct. 1018, 1028, 89 L.Ed.2d 166 (1986) (J. O'Connor and J. Powell concurring); *United States v. Distefano*, 279 F.3d 1241, 1244 (10th Cir.2002). However, the ques-

tion is what showing of undue hardship a claimant must make to support a finding that due process has been denied under particular circumstances. While there are no cases providing guidance, the Court believes that when the finding of special hardship is dependant in large part upon a claim that a debt in question has been fully paid, there must be some showing of objective good faith or reasonableness in support of a bare allegation of payment.

Because neither the due process question nor the ultimate issue of liability can be determined on the record of conflicting evidence before the Court, the finding of summary judgment entered on behalf of Ms. Charles on April 11, 2000 is STRICKEN and the motion for summary judgment by each party, upon reconsideration, is DENIED. This matter will be placed on the January civil trial calendar.

### III.

Ms. Charles has requested an award of attorneys' fees under the Equal Access to Justice Act (hereinafter "EAJA"). *See generally* 28 U.S.C. § 2412. However, this motion is premature. The Act states that "[a] party seeking an award of fees ... shall, within thirty days of final judgment in the action," submit an application to the district court. 28 U.S.C. § 2414(d)(1)(B). The EAJA defines "final judgment" as "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(1)(G). Because no final judgment has been entered, the Defendant's request for fees is DENIED.

### IV.

For the reasons given above, the Government's Motion to Alter or Amend Judgment [Doc. # 34] and the Government's Supplemental Motion to Alter or Amend Judgment [Doc. # 41] are GRANTED. The Court's Order Granting Summary Judgment for the Plaintiff is STRICKEN.

The Defendant's Application for Fees and Other Expenses [Doc. # 39] is DENIED as premature.

## ORDER

For the reasons stated in a contemporaneously filed Memorandum Opinion, the Government's Motion to Alter or Amend Judgment [Doc. # 34] and the Government's Supplemental Motion to Alter or Amend Judgment [Doc. # 41] are GRANTED. The Government's Motion for Judgment in its Favor [Doc. # 34] is DENIED. The Court's Order Granting Summary Judgment for the Plaintiff is STRICKEN. The Defendant's Application for Fees and Other Expenses [Doc. # 39] is DENIED as premature.

This matter will be placed on the January trial calendar.