**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21−2410

DEIDRA R. SQUIRE,

          Plaintiff – Appellant,

v.

IDENTITY, INC.; FRESIA GUZMAN, Director of Youth Centers; CAROLYN
CAMACHO, Director of Youth Centers; CANDANCE KATTER, Former Senior
Program Director; DIEGO URIBURU, Executive Director,

          Defendants – Appellees,

and

JOHN DOE DEFENDANTS; JANE DOE DEFENDANTS,

          Defendants.

Appeal from the United States District Court for the District of Maryland at Greenbelt.
Peter J. Messitte, Senior District Judge.  (8:20-cv-02062-PJM)

Submitted:  October 3, 2022                     Decided:  November 17, 2022

Before WILKINSON and NIEMEYER, Circuit Judges, and TRAXLER, Senior Circuit
Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Percy Squire, PERCY SQUIRE COMPANY LLC, Columbus, Ohio, for Appellant.  Russel B. Berger, Sarah M. Sawyer, OFFIT KURMAN, PA, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After Deidra Squire brought multiple discrimination claims against her former employer, Identity, Inc., the district court dismissed all but one—a disparate-treatment claim under Title VII of the Civil Rights Act—and granted her leave to amend. The district court later dismissed that remaining claim, which is the subject of the present appeal. For the following reasons, we affirm.

I.

In October 2014, Deidra Squire, a black woman, began contracting for Identity, Inc., a non-profit focused on assisting Latino families in high-poverty areas of Montgomery County, Maryland. The following month, Identity made Squire a full-time employee as "Program Manager" for its two youth centers. In this role, Squire oversaw more than ten staff members, weekly meetings, and a budget.

In early 2017, Identity reorganized its personnel in the youth centers. Under the new structure, Squire had reduced responsibilities and purview of only one youth center. Marie Dent Turner, also a black woman, was placed in an equivalent role at the other youth center, and Fresia Guzman, a Latino woman, was to supervise both Squire and Turner. Neither of Gruzman's subordinates were to last at Identity. First, Turner resigned in July, which Squires attributes to "frustration" with the reorganization, and was replaced by a Latino woman. J.A. 74. Then, a year later, Identity eliminated Squire's position—citing a lack of funding—and terminated her. Identity proceeded to give Turner's Latino successor a larger role with responsibility over both youth centers. Although Squire had spent more time working at Identity's youth centers, Turner's successor had more experience at Identity

3

overall. Some four months after Squire's departure, Identity hired a Latino woman to be a part-time "Junior Case Manager," which Squire alleges was similar to her previous role.

In the backdrop of these personnel changes, Squire makes additional allegations about Identity's workplace environment. She alleges that a supervisor was fired in 2015 after raising concerns about "organizational racial discrimination" toward black employees. J.A. 7. She further alleges that employees quit over concerns that Identity's focus on Latinos was compromising its ability to procure funds from Montgomery County. Additionally, Squire asserts that Identity's CEO referred to Latinos as "our people" and insisted on keeping the organization's motto, "Serving Latino youth and their families," despite complaints from black employees and clients. J.A. 8. Finally, Squire attests that she raised concerns about the reorganization with a senior manager, who would not meet with her and "retaliated" by promoting Guzman, her supervisor. J.A. 13.

After her termination, Squire filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), which was dismissed. She then filed suit in the District of Maryland, setting forth eleven claims against Identity and four of its leaders. In January 2021, the district court dismissed all of her claims against Identity's leaders and all but one claim—disparate treatment under Title VII—against the organization. Squire then filed an amended complaint. In August, the district court granted Identity's renewed motion for dismissal, or in the alternative, summary judgment—this time, with prejudice. Squire then filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), which the district court also denied.

Squire timely appealed.

4

II.

The "doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Hence, "naked assertions devoid of further factual enhancement" are insufficient to overcome a motion to dismiss. *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted)). Here, the district court properly dismissed Squire's amended complaint since she did not allege with sufficiently particularity suffering differential treatment from similarly situated employees. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

While Squire alleges that Identity terminated her based on race, she does not plead facts that take her inference across the "line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The elimination of her position within the organization—just because it came at Squire's expense as a black employee—is not indicative of racial animus. While her termination may be "*consistent* with discrimination, it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015). Though Identity could have opted to terminate a Latino colleague instead, Squire asks this court to infer too much by attributing Identity's choice to invidious discrimination. The inferential gap is especially yawning when an "obvious alternative explanation" could explain Identity's decision—here, that Squire's Latino counterpart enjoyed a longer tenure within the organization. *Id.* at 588. Squire thus did not make out a claim that her retained colleagues were similarly situated. She did not, moreover, allege

adequate factual matter to suggest that she was similarly situated to the new employee hired by Identity several months later, who had a different title and only part-time hours.

Squire's allegations about Identity's workplace environment do not otherwise satisfy her pleading burden because they do not account for *her* termination. Furthermore, while Squire stresses that employees have disagreed with Identity's Latino-focused mission and its 2017 reorganization, such differences in outlook do not infer that Identity eliminated the position of Squire—or any other employee—based on race. In sum, Squire's complaint does not "raise [her] right to relief above the speculative level" and thus cannot survive dismissal. *Id.* at 585 (quoting *Twombly*, 550 U.S. at 555).

Because we find that the district court properly dismissed Squire's complaint, we need not address its grant of summary judgment in the alternative.

### III.

After the dismissal of her claim, Squire motioned under Rule 59(e) for the district court to alter or amend its judgment to "correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co*, 148 F.3d 396, 403 (4th Cir. 1998). To meet this threshold, a decision must "strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (internal quotation marks omitted). Based on Squire's arguments, the district court should not have caught even a whiff.

Squire's contentions that Identity misled the district court and that the district court mislabeled her position—even if true—fall short of justifying the "extraordinary remedy" of reconsideration, "which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403

6

(quoting 11 Charles A. Wright et al., *Federal Practice and Procedure* § 2810.1, p. 124 (2d ed. 1995)). Nor does Squire's selective excerpt of the district court's line of questioning establish an error or injustice in its ultimate ruling, which we have now affirmed. Altogether, we conclude that the district court did not "abuse its discretion" by denying Squire's Rule 59(e) motion. *Sloas v. CSX Transp. Inc.*, 616 F.3d 380, 388 (4th Cir. 2010).

Squire lastly objects to the district court's decision to dismiss her complaint with prejudice. While it is true that denying leave without "determinations about prejudice, bad faith, or futility" *could* amount to an abuse of discretion, that was not the case here. *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.,* 576 F.3d 172, 194 (4th Cir. 2009). The district court expressly articulated the futility of Squire further amending her pleading "at this point." J.A. 456. Squire had already received the opportunity to amend once yet continued to make conclusory allegations without adequate factual enhancement. The district court did not, therefore, err in declining Squire's request for another leave.

## IV.

For the foregoing reasons, we hold that Squire did not raise a plausible claim of disparate treatment under Title VII. We thus affirm the district court's dismissal of her case and denial of her Rule 59(e) motion.

*AFFIRMED*

7