**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

VOLVO TRADEMARK HOLDING
AKTIEBOLAGET, a Swedish
corporation; VOLVO CONSTRUCTION
EQUIPMENT NORTH AMERICA, a
Delaware corporation; CHAMPION
ROAD MACHINERY LIMITED, a
Canadian corporation,
　　　　　　　*Plaintiffs-Appellees,*

v.

CLARK MACHINERY COMPANY, an
Arkansas corporation,
　　　　　　　*Defendant-Appellant,*

and

CLM EQUIPMENT COMPANY,
INCORPORATED, a Texas corporation;
FUTURE EQUIPMENT COMPANY,
INCORPORATED, a Texas corporation;
AIS CONSTRUCTION EQUIPMENT
CORPORATION, a Michigan
corporation; NUECES FARM CENTER,
INCORPORATED, d/b/a Nueces Power
Equipment, a Delaware corporation,
　　　　　　　*Defendants.*

No. 06-2091

VOLVO CONSTRUCTION EQUIPMENT
NORTH AMERICA, a Delaware
corporation; CHAMPION ROAD
MACHINERY LIMITED, a Canadian
corporation,
                    *Plaintiffs-Appellants,*

            and

VOLVO TRADEMARK HOLDING
AKTIEBOLAGET, a Swedish
corporation,
                            *Plaintiff,*

            v.

CLARK MACHINERY COMPANY, an
Arkansas corporation,
                    *Defendant-Appellee,*

            and

CLM EQUIPMENT COMPANY,
INCORPORATED, a Texas corporation;
FUTURE EQUIPMENT COMPANY,
INCORPORATED, a Texas corporation;
AIS CONSTRUCTION EQUIPMENT
CORPORATION, a Michigan
corporation; NUECES FARM CENTER,
INCORPORATED, d/b/a Nueces Power
Equipment, a Delaware corporation,
                        *Defendants.*

No. 06-2145

Appeals from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(1:00-cv-00238)

Argued: September 27, 2007

Decided: December 20, 2007

Before TRAXLER and KING, Circuit Judges, and
Benson E. LEGG, Chief United States District Judge for the
District of Maryland, sitting by designation.

---

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Traxler and Judge Legg joined.

---

## COUNSEL

**ARGUED:** Scott E. Korzenowski, DADY & GARNER, P.A., Minneapolis, Minnesota, for Appellant/Cross-Appellee. Michael J. Lockerby, FOLEY & LARDNER, L.L.P., Washington, D.C., for Appellees/Cross-Appellants. **ON BRIEF:** J. Michael Dady, Ronald K. Gardner, DADY & GARNER, P.A., Minneapolis, Minnesota; Edward L. Bleynat, Jr., FERIKES & BLEYNAT, P.L.L.C., Asheville, North Carolina, for Appellant/Cross-Appellee. Vineeta A. Bathia, FOLEY & LARDNER, L.L.P., Washington, D.C., for Appellees/Cross-Appellants.

---

## OPINION

KING, Circuit Judge:

This civil action was initiated more than seven years ago by three heavy equipment manufacturers (collectively, "Volvo")[1] against several equipment dealers, and has involved numerous claims, counter-claims, and defenses arising from a contract dispute between the parties. While originally pending in the Western District of North

---

[1]The parties generally referred to as "Volvo" are Volvo Construction Equipment North America, Volvo Trademark Holding Aktiebolaget, and Champion Road Machinery Limited. Because Volvo Construction Equipment North America and Champion Road Machinery Limited are the only appellants in the cross-appeal, our use of the term "Volvo" in some circumstances is limited to them.

Carolina, the district court granted judgment on the pleadings against the defendants, including Clark Machinery Company, an Arkansas corporation ("Clark"). Clark and two other defendants (collectively, the "Dealers")[2] appealed from the judgment, and we affirmed the district court's decision in all aspects except one: its judgment for Volvo on Clark's claims under the Arkansas Franchise Practices Act (the "Arkansas Act") for termination of its franchise without good cause. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 611 (4th Cir. 2004) (vacating judgment on Clark's claims under Arkansas Act and remanding for further proceedings).

On remand, the district court entered summary judgment against Volvo with respect to its liability to Clark under the Arkansas Act. During the ensuing trial on damages, the jury declined to make a damages award to Clark. The court subsequently denied Clark's requests for a new trial and for attorneys' fees. In its appeal, Clark seeks relief from the court's orders denying its motions for a new trial and for attorneys' fees. By its cross-appeal, Volvo challenges the district court's summary judgment decision. Because we conclude that the court did not err in the remand proceedings, we affirm.

I.

A.

The factual and procedural underpinnings of this matter were explained in detail in our prior decision. *See Volvo Constr. Equip.*, 386 F.3d at 587-91. In short, the parties' dispute revolves around the termination of agreements (the "Dealer Agreements") under which Champion Road Machinery Limited ("Champion") had supplied large earth-moving motor graders ("Champion Motor Graders") to Clark and the other Dealers for resale. After purchasing Champion in 1997, Volvo decided that it could compete more effectively with other manufacturers if it marketed motor graders under a single brand name (i.e., Volvo) and through a single dealer network (i.e., that of Volvo). Volvo thus proceeded to "Volvoize" its products by reengineering and rebranding Champion Motor Graders for sale under the VOLVO

---

[2]The "Dealers" — in addition to Clark — are CLM Equipment Company, Incorporated, and Future Equipment Company, Incorporated.

trademark, and to implement a "Dealer Rationalization" plan by integrating the Volvo and Champion dealer networks. In 2000, the Dealers responded to the "Volvoization" and "Dealer Rationalization" efforts by demanding that Volvo continue to supply them with motor graders manufactured by Volvo at the former Champion factory. The Dealers, however, were not selected as authorized sellers of such motor graders, and were notified by Volvo that it would no longer supply them with Champion Motor Graders. More particularly, Volvo notified Clark on October 10, 2000, that its Dealer Agreement would be terminated on January 9, 2001.

Also on October 10, 2000, Volvo filed its complaint in the Western District of North Carolina (the "North Carolina Litigation"), seeking a declaration that, pursuant to the Dealer Agreements, it was not obliged to continue supplying Champion Motor Graders to Champion dealers. The complaint was later amended to name Clark as a defendant, along with (among others) the previously named Dealers. On March 20, 2001, the Dealers filed a separate action against Volvo in the Eastern District of Arkansas (the "Arkansas Litigation"). The Arkansas court subsequently transferred the Arkansas Litigation to the Western District of North Carolina, and the parties thereafter consented to consolidation of the Arkansas Litigation with the North Carolina Litigation in the North Carolina court. Notably, Clark and the other Dealers asserted twelve counterclaims in the North Carolina Litigation that mirrored their twelve claims in the Arkansas Litigation. Among them were Clark's claim and counterclaim based on Volvo's alleged violation of the Arkansas Act.

On December 13, 2002, the district court in North Carolina filed the opinion from which the original appeal and our prior decision emanated. *See Volvo Trademark Holding Aktiebolaget v. CLM Equip. Co., Inc.*, 236 F. Supp. 2d 536 (W.D.N.C. 2002) (the "Opinion"). By its Opinion, the court granted Volvo partial judgment on the pleadings. The court determined, inter alia, that Volvo's refusal to supply the Dealers with Champion Motor Graders did not breach the Dealer Agreements because each agreement contained a "Without Cause Provision" authorizing termination of a dealership without cause. In addition, the court concluded that the Dealers were not protected by state dealer protection statutes (the "State Statutes") — including the Arkansas Act invoked by Clark — which, according to the Dealers,

trumped the Without Cause Provision and precluded Volvo from terminating the Dealer Agreements without cause. Volvo subsequently dismissed its remaining claims, rendering the Opinion appealable.

B.

The Dealers appealed and, by our prior decision of October 8, 2004, we concluded — contrary to the contention of the Dealers — that the district court committed no error in exercising jurisdiction in the North Carolina Litigation. *See Volvo Constr. Equip.*, 386 F.3d at 592-95. Next, we rejected the Dealers' assertion that the court erred in ruling that Volvo had not breached it contractual obligations by terminating the Dealer Agreements, *id.* at 595-99, as well as the Dealer's contention that Volvo was nevertheless estopped from breaching certain oral promises it had made after the Dealer Agreements were executed, *id.* at 599. Finally, we addressed the Dealers' position that, notwithstanding the Without Cause Provision in the Dealer Agreements, Volvo was prohibited by the State Statutes from terminating the Agreements without cause. *Id.* at 599-611. Ultimately, we deemed only Clark to be entitled to statutory protection, specifying that such protection arose under the Arkansas Act. *Id.* at 611.

Our discussion of the applicability of the Arkansas Act focused, in relevant part, on Volvo's contention that Clark could not rely on the Act because a "Choice-of-Law Provision" in its particular Dealer Agreement provided that "the rights, duties and obligations of the parties . . . shall be determined according to the laws of . . . South Carolina." *Volvo Constr. Equip.*, 386 F.3d at 601 & n.18. Clark had countered that the Choice-of-Law Provision was invalid, in that the law selected thereunder (i.e., that of South Carolina) contravened a fundamental policy of Clark's home state of Arkansas. *Id.* at 601. Before assessing whether the Arkansas Act constituted a fundamental policy of Arkansas and thus governed Clark's Dealer Agreement, we considered the issue of whether Clark was a protected party under the Act. *Id.* at 604. In so doing, we observed the following:

> In the district court, Volvo maintained that Clark was not protected by the Arkansas Act . . . because, pursuant to the Choice-of-Law Provision, Clark's . . . Dealer Agreement[ ] [is] governed by South Carolina law. Volvo did not, how-

ever, assert that the statute[ ] in question, by [its] terms, fail[s] to apply to Clark's . . . Dealer Agreement[ ]. Absent the Choice-of-Law Provision, Clark could state a claim under the Arkansas Act . . . .

*Id.* at 606.

We then turned to an assessment of whether the Arkansas Act embodied a fundamental state policy, recognizing that "North Carolina will not honor a choice-of-law provision if the law of the chosen state is contrary to the fundamental policy of a state possessing a greater interest in the issue than the chosen state." *Volvo Constr. Equip.*, 386 F.3d at 607.[3] We concluded that the Arkansas Act indeed embodied a fundamental state policy, explaining that the Act "render-[ed] the termination of a dealer agreement, absent good cause, a violation of the fundamental policy of Arkansas," and that Arkansas had "a materially greater interest than South Carolina in determining whether a dealer agreement between an Arkansas dealer and an out-of-state manufacturer can be terminated without cause." *Id.* at 610. Having so ruled, we addressed Volvo's assertion that, even if Clark's Dealer Agreement was governed by the Arkansas Act, Volvo did not violate the Act because the Agreement was terminated for good cause. *Id.* We determined that "a genuine factual dispute exists as to whether Volvo possessed good cause, under the Arkansas Act, to terminate Clark's Dealer Agreement." *Id.* at 611. By our prior decision, we therefore remanded "Clark's statutory claim (in the Arkansas Litigation) and its statutory counterclaim (in the North Carolina Litigation) for the district court's assessment of whether, pursuant to the Arkansas Act, Volvo terminated Clark's Dealer Agreement without good cause." *Id.*

## C.

---

[3]In considering the contentions surrounding the State Statutes, we were faced with the issue of whether to apply the substantive law (including choice-of-law rules) of North Carolina or Arkansas. *See Volvo Constr. Equip.*, 386 F.3d at 599-601. We chose the law of North Carolina, as the state in which the district court sits, because North Carolina law was sufficiently similar to Arkansas law "that the outcome of this dispute would be the same under either set of rules." *Id.* at 600.

On February 16, 2006, during the remand proceedings, the district court granted summary judgment to Clark on its claims under the Arkansas Act, concluding, inter alia, that Volvo had terminated the Dealer Agreement without good cause. *See Volvo Trademark Holding Aktiebolaget v. AIS Constr. Equip. Corp.*, 416 F. Supp. 2d 404 (W.D.N.C. 2006). The court then scheduled the issue of damages for trial. On July 12, 2006, the jury returned a verdict finding that, despite Volvo's violation of the Arkansas Act, Clark had suffered no actual damages. On July 14, 2006, the court entered judgment on the verdict, specifying that Clark was not entitled to damages.

On July 28, 2006, Clark filed a motion for a new trial based on several contentions of error, and, on August 2, 2006, it filed a motion, pursuant to the Arkansas Act, for attorneys' fees. On September 8, 2006, the district court denied Clark's motion for a new trial. Thereafter, on October 2, 2006, the court rejected Clark's motion for attorneys' fees. Clark has timely appealed the court's denial of its requests for a new trial and for attorneys' fees, and Volvo has cross-appealed from the court's summary judgment award in favor of Clark. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Volvo's contentions on cross-appeal concern the district court's award of summary judgment to Clark on its claims under the Arkansas Act. Because reversal of the summary judgment award would render moot the contentions made in Clark's appeal, we first address Volvo's cross-appeal. Volvo makes two appellate contentions: (1) the district court erred in concluding that Volvo was precluded from raising the issue of the applicability of the Arkansas Act on remand, and (2) the court erred in concluding that Volvo terminated Clark's Dealer Agreement without good cause. We assess Volvo's contentions in turn.

## A.

Volvo first contends that the district court erroneously applied the "mandate rule" in deciding on remand that Volvo was precluded from asserting that the Arkansas Act did not apply to Clark's Dealer Agreement. We are obliged to review de novo a district court's interpreta-

tion of an appellate mandate. *See S. Atl. Ltd. P'ship of Tenn., LP v. Riese*, 356 F.3d 576, 583 (4th Cir. 2004) (explaining that "[w]e review de novo . . . whether a post-mandate judgment of a district court contravenes the mandate rule, or whether the mandate has been scrupulously and fully carried out" (internal quotation marks omitted)).

On remand, Volvo asserted that the existence of a "franchise" is an element of any claim for violation of the Arkansas Act, and that the burden was on Clark to show that the Dealer Agreement granted it a franchise under the Act. *See* Ark. Code Ann. § 4-72-203 (West 2007) (specifying that "this subchapter applies only to a franchise"). Volvo maintained that Clark had not satisfied this burden, and thus that the Act did not apply to Clark's Dealer Agreement. Without reaching the merits of this contention, the district court concluded that Volvo was precluded from pursuing it on remand. In so ruling, the district court relied on the following language from our prior decision:

> "In the district court, Volvo maintained that Clark was not protected by the Arkansas Act . . . because, pursuant to the Choice-of-Law Provision, Clark's . . . Dealer Agreement[ ] [is] governed by South Carolina law. Volvo did not, however, assert that the statute[ ] in question, by [its] terms, fail[s] to apply to Clark's . . . Dealer Agreement[ ]. *Absent the Choice-of-Law Provision, Clark could state a claim under the Arkansas Act . . . ."*

*Volvo Trademark*, 416 F. Supp. 2d at 409 (quoting *Volvo Constr. Equip.*, 346 F.3d at 606). The district court then explained that "[t]he Fourth Circuit would not have considered whether the Act constituted fundamental policy unless and until it found that Clark was a 'protected part[y] under [that] statute[ ].'" *Id.* (quoting *Volvo Constr. Equip.*, 346 F.3d at 604). Invoking the mandate rule, the district court further explained that, by determining that the Arkansas Act constituted a fundamental state policy, this Court had foreclosed Volvo's argument that the Act does not offer protection to Clark. *Id.* Additionally, the district court observed that Volvo had not raised the franchise element issue either before it or in this Court prior to the remand proceedings. *Id.*

In its cross-appeal, Volvo contends that the district court erroneously applied the mandate rule in the remand proceedings and that our prior decision did not absolve Clark of its burden of proving the franchise element of its claim under the Arkansas Act. The mandate rule is a specific application of the law of the case doctrine. *See United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993). The rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court." *Id.* Significantly, as the district court recognized, Volvo did not raise the franchise element issue in the earlier proceedings, either in the district court or in this Court. *See Volvo Constr. Equip.*, 386 F.3d at 606 ("Volvo did not . . . assert that the [Arkansas Act], by [its] terms, fail[ed] to apply to Clark's . . . Dealer Agreement[ ]."); *Volvo Trademark*, 416 F. Supp. 2d at 409 ("Volvo did not raise the issue of non-application before this Court in the first proceeding . . . ."). As the district court also recognized, under the mandate rule a remand proceeding is not the occasion for raising new arguments or legal theories. Consequently, it properly concluded that Volvo had waived its contention on the franchise element and, as a result, was not entitled to raise it on remand.

Furthermore, absent exceptional circumstances, the mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Bell*, 5 F.3d at 66. Our prior opinion expressly provided that "[a]bsent the Choice-of-Law Provision, Clark could state a claim under the Arkansas Act." *Volvo Constr. Equip.*, 386 F.3d at 606. By concluding that Clark could state a claim under the Arkansas Act, we necessarily recognized that Clark's Dealer Agreement granted it a franchise under the Arkansas Act.[4]

---

[4]Volvo also maintains on cross-appeal that it was not obliged to raise the franchise issue by the time the Opinion was filed in the original district court proceedings, in that discovery had not concluded. The language of our prior decision plainly indicated that we viewed the applicability of the Arkansas Act to have been conceded by Volvo, aside from its contention on the Choice-of-Law Provision. If Volvo was of the view that we had resolved this issue prematurely, it could have so asserted in a petition for rehearing. *See* 4th Cir. Local Rule 40(a).

B.

Volvo next contends that the district court erred in granting summary judgment to Clark on the basis of its conclusion that Volvo had terminated Clark's Dealer Agreement without good cause. As a general proposition, we review de novo a district court's award of summary judgment, viewing the facts in the light most favorable to the non-moving party. *See Lee v. York County Sch. Div.*, 484 F.3d 687, 693 (4th Cir. 2007). An award of summary judgment may be appropriately made only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Arkansas Act includes a list of eight occurrences that constitute "good cause" for termination or cancellation of a franchise. *See* Ark. Code Ann. § 4-72-202 (West 2007).[5] The district court held,

---

[5]The Arkansas Act states that "[i]t shall be a violation of this subchapter for a franchisor to . . . terminate or cancel a franchise without good cause." Ark. Code Ann. § 4-72-204 (West 2007). Under the Arkansas Act, "good cause" is defined as one of the following occurrences:

(A)  Failure by a franchisee to comply substantially with the requirements imposed upon him or her by the franchisor, or sought to be imposed by the franchisor, which requirements are not discriminatory as compared with the requirements imposed on other similarly situated franchisees, either by their terms or in the manner of their enforcement; or

(B)  The failure by the franchisee to act in good faith and in a commercially reasonable manner in carrying out the terms of the franchise; or

(C)  Voluntary abandonment of the franchise; or

(D)  Conviction of the franchisee in a court of competent jurisdiction of an offense, punishable by a term of imprisonment in excess of one (1) year, substantially related to the business conducted pursuant to the franchise; or

(E)  Any act by a franchisee which substantially impairs the franchisor's trademark or trade name; or

adopting Clark's position, that this list constituted the exclusive means by which a franchisor may terminate a franchise for good cause under the Arkansas Act. Volvo acknowledges that it did not terminate Clark's Dealer Agreement for any of the specific reasons provided for in the Arkansas Act, but contends that those eight occurrences are not an exclusive list of what constitutes good cause for termination of a franchise. Appurtenant to this contention, Volvo maintains that its reasons for termination, i.e., "Volvoization" and "Dealer Rationalization," also constitute good cause for a franchise termination under the Arkansas Act.

As the district court aptly recognized, Volvo's contention presents an issue of statutory construction, and a federal court sitting in diversity is obliged to apply state law principles to resolve such a question, utilizing such principles as enunciated and applied by the state's highest court. *See Volvo Trademark*, 416 F. Supp. 2d at 410 (citing *Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 274 (3d Cir. 1995)). The Arkansas Supreme Court has not resolved the statutory issue raised by Volvo, and we are therefore obliged to interpret the Arkansas Act by applying the principles of statutory construction that would guide an Arkansas court in making such a decision. *See CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 118 (4th Cir. 2004).

The district court made a thorough explanation of its ruling on this issue. According to the applicable Arkansas legal principles, if a statute is clear, it is to be given its plain meaning, and courts are not to

(F)  The institution of insolvency or bankruptcy proceedings by or against a franchisee, or any assignment or attempted assignment by a franchisee of the franchise or the assets of the franchise for the benefit of the creditors; or

(G)  Loss of the franchisor's or franchisee's right to occupy the premises from which the franchise business is operated; or

(H)  Failure of the franchisee to pay to the franchisor within ten (10) days after receipt of notice of any sums past due the franchisor and relating to the franchise.

*Id.* § 4-72-202.

search for any legislative intent. *See Volvo Trademark*, 416 F. Supp. 2d at 411 (citing *Hinchery v. Thomasson*, 727 S.W.2d 836 (Ark. 1987)). Arkansas also subscribes to the legal principle of *expressio unius est exclusio alterius*, meaning "'that the express designation of one thing may properly be construed to mean the exclusion of another.'" *Id.* (quoting *Gazaway v. Greene County Equalization Bd.*, 864 S.W.2d 233, 236 (Ark. 1993)).

Applying these controlling principles to the Arkansas Act, the district court concluded that good cause for termination of a franchise under the Act is limited to the eight occurrences specifically enumerated therein. *See Volvo Trademark*, 416 F. Supp. 2d at 412. The court deemed the Arkansas Act to be clear on its face, and determined that the express designation of those eight occurrences precluded any other circumstance from constituting good cause for a franchise termination. *Id.* at 411. As a result, the court concluded that the Arkansas Supreme Court would have held that the "circumstances constituting 'good cause' for termination under the [Arkansas Act] are limited to those expressly designated in" the Act and, because Volvo's actions did not fall under one of the enumerated occurrences, it had terminated Clark's Dealer Agreement in violation of the Arkansas Act. *Id.* at 412, 416-17.

Volvo maintains that the district court's interpretation of the Arkansas Act on this point contravenes the dormant commerce clause.[6] It further asserts that resolution of this issue is controlled by our deci-

---

[6]In explaining the dormant commerce clause, we have recently spelled out the following:

> The Commerce Clause grants Congress the power "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. Although the Clause speaks only of congressional power, the Supreme Court since 1852 has construed the Commerce Clause as incorporating an implicit restraint on state power in the absence of congressional action — hence the notion of a "dormant" Commerce Clause. The dormant Commerce Clause thus limits the power of the States to erect barriers against interstate trade.

*Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 567 (4th Cir. 2005) (internal citations and quotation marks omitted).

sion in *Central GMC, Inc. v. General Motors Corp.*, 946 F.2d 327 (4th Cir. 1991). Volvo contends that, in *Central GMC*, we established as a matter of law that any "good cause" provision of a franchise statute that does not permit either market withdrawals or the franchisor's business interests to constitute good cause will contravene the dormant commerce clause. We agree with the district court, however, that Volvo's reliance on *Central GMC* is misplaced.

The *Central GMC* decision involved a Maryland statute regulating the termination of franchises. Central GMC was a GMC Truck franchisee that sold and serviced light, medium, and heavy duty GMC trucks in Maryland. *See* 946 F.2d at 329. In 1986, GMC decided to discontinue its heavy duty truck line due to losses it had suffered since the 1970s. *Id.* Rather than liquidating its heavy duty truck operations, however, GMC transferred its assets to a new corporation formed with AB Volvo, a Swedish automobile manufacturer. *Id.* By the end of 1987, GMC had discontinued the manufacturing and marketing of heavy duty trucks. *Id.* Subsequently, Central GMC brought an action against GMC, alleging that Central GMC owned a franchise for GMC heavy duty trucks and that this franchise had been terminated by GMC in contravention of the Maryland franchise statute. *Id.* at 330.

The main issue in *Central GMC* was whether a single franchise had been granted by GMC to the franchisee (Central GMC) for the sale of all of the GMC truck product lines, or whether, on the other hand, the light, medium, and heavy duty GMC truck lines each constituted a separate franchise. *See* 946 F.2d at 330. Central GMC contended that it held separate franchises for each of these three lines and, thus, that GMC's discontinuance of its heavy duty truck line constituted a termination of that franchise. *Id.* We concluded that Central GMC held only a single franchise, however, and that the withdrawal of the heavy duty truck line by GMC could not be treated as a franchise termination because, inter alia, "a reading of the Maryland statute equating the discontinuance of a product line with impermissibly terminating a franchise would raise significant commerce clause concerns." *Id.* at 332.

As this aspect of the *Central GMC* decision demonstrates, we observed that commerce clause concerns would arise from a ruling

that the discontinuation of a single product line that is part of an over-all franchise constitutes the improper termination of a separate franchise. Significantly, we did not, in *Central GMC*, conclude that such an event would violate the dormant commerce clause. Such a circumstance is readily distinguishable from this case, where Volvo terminated its entire Dealer Agreement with Clark, not just one product line that was part of the overall larger Dealer Agreement. As a result, *Central GMC* is not controlling.[7]

In these circumstances, the district court properly concluded that the enumerated occurrences in the Arkansas Act are the exclusive means by which a franchisor can terminate a franchise for "good cause," and that this interpretation does not contravene the dormant commerce clause. We therefore affirm the district court's ruling on this aspect of Volvo's cross-appeal.

## III.

Clark raises two separate contentions in its appeal — specifically, that the district court erred in failing to award a new trial because of erroneous jury instructions, and that it also erred in denying Clark's motion for attorneys' fees. We address these contentions in turn.

## A.

Clark sought a new trial in the district court, asserting that the court had erred in refusing to instruct the jury that Volvo had violated the Arkansas Act by terminating the Dealer Agreement without "good cause," and because the court had erroneously instructed the jury on the issue of mitigation of damages. We review a trial court's jury instructions for abuse of discretion, and it is well settled that a trial

---

[7]Volvo contends that, even if *Central GMC* is inapplicable in this case, the district court's interpretation of the Arkansas Act yet violates the dormant commerce clause. The district court concluded, however, that its interpretation of the Act was not a per se violation of the commerce clause, nor placed an excessive burden on interstate commerce under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). *See Volvo Trademark*, 416 F. Supp. 2d at 414-17. We agree with the district court in this respect.

court has broad discretion in framing its instructions to a jury. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 n.11 (4th Cir. 2003). Thus, the jury instructions will not furnish a basis for reversal of an adverse verdict so long as, taken as a whole, they "adequately state the controlling law." *Id.* (internal quotation marks omitted). We nevertheless review de novo claims that the jury instructions failed to correctly state the law. *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003).

1.

Of importance here, the trial court's instructions to the jury on the franchise termination issue included the following:

> It has been previously determined that the agreement was terminated by Volvo in violation of the Arkansas Franchise Practices Act.

> Now, the question of whether the Dealership Agreement was terminated, or whether such termination violated the Franchise Practices Act, is not before you. That decision has been made.

> Your sole function in this trial is to determine what amount of damages, if any, Clark is entitled to receive as a result of that termination.

J.A. 1579.[8] Clark asserts on appeal that the court's failure to instruct on the specifics of Volvo's unlawful acts resulted in the jury being given an inaccurate statement of law and, consequently, that a new trial is mandated.

Although Clark contends that the instructions included an erroneous statement of the applicable legal principles, it has failed to demonstrate how the instructions were legally inaccurate. It asserts only that the court should have explained in further detail that Volvo had

---

[8]Citations to "J.A. ____" refer to the Joint Appendix filed by the parties in this appeal.

violated the Arkansas Act by terminating the Clark Dealer Agreement without "good cause" and that the instructions, as given, were impermissibly confusing. Clark fails to specify how the absence of further details in the instructions constitutes an erroneous statement of law. In these circumstances, we assess this challenge for abuse of discretion only.

As spelled out above, problems in jury instructions will not warrant reversal of a jury verdict so long as, taken as a whole, the instructions adequately state the controlling legal principles. And, it is clear that the instructions challenged by Clark met that test. The court explained to the jury that Volvo had terminated the Dealer Agreement in violation of the Arkansas Act, and, as a result, the jury's only obligation was to determine the damages Clark was entitled to, if any. In this context, the court did not abuse its discretion.

2.

Clark next asserts that the district court erred in instructing the jury to consider Clark's failure to mitigate its damages. Because the instructions to the jury on damages were adequate, and the jury concluded that Clark was not entitled to recover any damages, the mitigation of damages instruction could be, at most, harmless error, in that it was unnecessary for the jury to reach the mitigation issue. *See S. Atl. Ltd. P'ship of Tenn., LP v. Riese*, 284 F.3d 518, 530 (4th Cir. 2002) (explaining that "[e]ven if instructions are flawed, there can be no reversal unless the error seriously prejudiced the challenging party's case").

B.

Finally, Clark maintains that the district court erred in denying its motion for attorneys' fees. We review such a ruling for abuse of discretion. *See Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004) (citing *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001)).

The damages provision of the Arkansas Act controls the attorneys' fees issue and states: "Any franchisee *who is harmed* by a violation of any other section of this subchapter shall be entitled to recover actual damages in a civil action and, *where appropriate*, obtain

injunctive relief in addition to reasonable attorneys' fees and costs of litigation." Ark. Code Ann. § 4-72-208 (West 2007) (emphasis added). In assessing this provision, the district court, in its Order of October 2, 2006, concluded that the words "where appropriate" modified both "injunctive relief" and a potential award of attorneys' fees, committing such an award to the discretion of the court. *See* J.A. 1618. The district court concluded that a party could recover attorneys' fees in the absence of a damages award, but that, based simply on a violation of the Act, there was no automatic entitlement to such an award. *Id.* at 1617. The court then concluded that a decision on attorneys' fees was in its discretion, but that Clark, in the circumstances of this case, was not entitled to recover such an award. *Id.*

On appeal, Clark contends that the term "harmed" is not synonymous with the words "suffered damages," and thus, even though the jury found against it on damages, it is entitled to an award of attorneys' fees. Furthermore, Clark asserts that, in interpreting the attorneys' fees provision of the Act, the "and" that separates the phrase "where appropriate, injunctive relief," from the phrase "reasonable attorneys' fees and costs of litigation," signals an intention that the "where appropriate" language applies to injunctive relief only, and the "shall be entitled to" terminology applies to the phrase "reasonable attorneys' fees and costs." On this reasoning, Clark asserts that the Arkansas Act mandated the district court to grant its motion for attorneys' fees.

Clark's argument on this point is unpersuasive. As explained by the district court, the attorneys' fees provision plainly reserves the issue of whether to make an award of attorneys' fees to the discretion of the court. *Id.* at 1618. Exercising its discretion, the district court concluded that Clark had not satisfied its burden of showing how it had been "harmed" by Volvo's actions, and thus denied the motion for attorneys' fees. *Id.* at 1617. As a result, the court did not abuse its discretion in so ruling.

## IV.

Pursuant to the foregoing, we affirm the district court's summary judgment award in favor of Clark, and we affirm as well the court's rulings in favor of Volvo on the new trial and attorneys' fees issues.

*AFFIRMED*