**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1746**

JTH TAX, INCORPORATED, d/b/a Liberty Tax Service; SIEMPRETAX+ LLC,

Plaintiffs – Appellants,

v.

GREGORY AIME; WOLF VENTURES, INC., d/b/a Wolf Enterprises,

Defendants – Appellees,

and

AIME CONSULTING, LLC; AIME CONSULTING, INC.,

Defendants.

**No. 19-1792**

JTH TAX, INCORPORATED, d/b/a Liberty Tax Service; SIEMPRETAX+ LLC,

Plaintiffs – Appellees,

v.

GREGORY AIME; WOLF VENTURES, INC., d/b/a Wolf Enterprises,

Defendants – Appellants,

and

AIME CONSULTING, LLC; AIME CONSULTING, INC.,

Defendants.

Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk.  Henry Coke Morgan, Jr., Senior District Judge.  (2:16-cv-00279-HCM-DEM)

Argued:  October 27, 2020

Decided:  January 4, 2021

Before GREGORY, Chief Judge, DIAZ, and RICHARDSON, Circuit Judges.

Affirmed in part, reversed and vacated in part, and remanded with instructions by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Diaz and Judge Richardson joined.

**ARGUED:**  Amy Mason Saharia, WILLIAMS & CONNOLLY, LLP, Washington, D.C., for Appellants/Cross-Appellees.  David Caldwell Hartnett, CRENSHAW WARE & MARTIN, PLC, Norfolk, Virginia, for Appellees/Cross Appellants.  **ON BRIEF:**  Bradley D. Masters, Sarah Golabek-Goldman, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellants/Cross-Appellees.  W. Ryan Snow, CRENSHAW WARE & MARTIN, P.L.C., Norfolk, Virginia, for Appellees/Cross-Appellants.

GREGORY, Chief Judge:

Gregory Aime was a successful franchise operator of several tax preparation businesses under the umbrella of JTH Tax, Inc. and SiempreTax+ LLC (together, "Liberty Tax"). The relationship between franchisee and franchisor deteriorated, resulting in litigation that culminated in a bench trial before the district court. Aime largely prevailed and was awarded a significant sum of damages. Both parties appealed. This Court vacated a substantial portion of the damages award but upheld the judgment in Aime's favor. Upon remand, the district court recalculated damages based on our instructions. On Aime's motion, the district court subsequently amended its judgment, increasing the damages award based on purportedly new evidence. Now, once again, both parties appeal.

Aime argues the district court erred by not awarding him more, and Liberty Tax argues the district court erred by awarding him too much. In general, we are sympathetic to the district court's concerns about Liberty Tax's bad faith conduct. We find no error in the district court's denial of Aime's arguments for reinstatement of much of the original damages. But we do find error in the court's conclusion that Aime met the standard for relief based on newly discovered evidence and in the award of nominal damages. We affirm in part, reverse and vacate in part, and remand with instructions to recalculate damages in accordance with this opinion.

3

I.

For purposes of factual background, we assume familiarity with the facts laid out in our prior opinion, *JTH Tax, Inc. v. Aime*, 744 F. App'x 787, 789–91 (4th Cir. 2018) (*JTH Tax I*), and provide only a summary exposition here.

A.

Aime operated nine tax services franchises under agreements with Liberty Tax. Those agreements included the condition that Aime maintain an Electronic Filing Identification Number ("EFIN") from the IRS.[1] In January 2016, the IRS revoked Aime's EFIN based on suspicions of fraud. Under the franchise agreements, Liberty Tax was entitled to terminate its relationship with Aime as a result. However, the parties elected to negotiate a new agreement instead, the "Purchase and Sale Agreement" ("PSA").

Liberty Tax agreed to purchase Aime's franchises back, and Aime agreed to apply for reinstatement of his EFIN. Liberty Tax also agreed to take charge of operating the franchises and pay for all associated expenses and liabilities, including rent and utilities. If Aime's EFIN was restored by May 8, 2016, the PSA provided that he "shall have" the option to buy back the franchises—pursuant to a new purchase and sale agreement and subject only to Liberty Tax's "standard sales and approval process." If Aime successfully bought back the franchises, Liberty Tax would owe him any profits earned in the meantime. The PSA also authorized Liberty Tax to request that Aime work with his landlords to assign

---

[1] An EFIN authorizes commercial tax preparers to file their customers' tax returns electronically and is required by law.

4

the leases for each franchise property to Liberty Tax, but such transfer was not immediate, and the leases initially remained in Aime's name.

Despite its obligations to Aime under the PSA, Liberty Tax immediately began to contemplate selling the franchises to another buyer. As the district court put it—making findings from the bench after trial—"the course of conduct of Liberty throughout the dispute and during the trial indicates that they never had any intention of recognizing Aime's right to repurchase the business." Meanwhile, Aime attempted in earnest to restore his EFIN status, but it soon became apparent that he would be unable to do so by the May deadline. Nevertheless, Liberty Tax's CEO represented to Aime, through an employee, that Liberty Tax would extend the deadline for Aime's EFIN reinstatement to the end of the year. Aime represented his acceptance and continued operating under the apparent understanding that he had until the end of the year to buy back the franchises.

The parties' relationship soon deteriorated. Liberty Tax requested that Aime assign it the leases for the franchise properties, as provided for by the PSA, but the parties could not agree to terms for the assignment. At some point, Liberty Tax stopped paying its rent and utilities obligations. Eventually Aime changed the entry code used to access some of the properties, effectively denying Liberty Tax access. Liberty Tax sued in federal court, and Aime countersued. In September 2016, amidst the litigation, Aime received his new EFIN from the IRS.

B.

After a bench trial, the district court found that Liberty Tax breached the PSA first by failing to pay franchise expenses as required. Liberty Tax also breached the covenant

5

of good faith and fair dealing. Further, the court gave effect to the disputed extension of the buyback deadline, finding that Liberty Tax had, in fact, extended the deadline to the end of the year. And because Aime's EFIN was restored in September, the district court found that he would have invoked his buyback option if not for Liberty Tax's breach. Therefore, in addition to owing Aime damages for the unpaid expenses, the court held that Liberty Tax owed lost profits damages. The court denied Aime's remaining claims—for anticipatory breach, fraud, and punitive damages and attorneys' fees—as covered by the breach of contract claim or as otherwise unavailable. The district court calculated the total damages as $2,736,896.17.

Both parties appealed. Liberty Tax challenged the district court's judgment in favor of Aime and certain evidentiary rulings, and Aime challenged the denial of his fraud and attorneys' fees claims. This Court affirmed the district court's conclusion that Liberty Tax breached the PSA first such that Aime prevailed on his breach of contract claim. *JTH Tax I*, 744 F. App'x at 794. We also affirmed the denial of Aime's other claims. *Id.* at 793–94. However, we found error concerning the buyback extension deadline. Because the offer to extend the deadline came with no new consideration, the parties never reached an enforceable agreement. *Id.* at 791–93. And because Aime had not obtained a new EFIN by the May deadline, he could not be awarded damages based on the option to buyback the franchises. *Id.* at 794. Therefore, Aime was not entitled to lost profits, and we vacated that portion of the district court's award. *Id.* We remanded for recalculation of damages. *Id.*

Upon remand, the parties agreed that the breach of contract damages totaled $248,246.27—the amount of unpaid expenses and other liabilities. Aime argued further,

6

however, that he was entitled to separate damages on his claim for breach of the covenant of good faith and fair dealing. Aime reasoned that, because the district court found that Liberty Tax had no intention of honoring the PSA from the start, Liberty Tax effectively breached the good faith covenant at the very outset of the agreement. According to Aime, because that breach occurred at a time when it was still possible that he would become eligible to exercise his buyback option, lost profits were "foreseeable" damages and he was entitled to the same damages previously awarded.

The district court awarded Aime the agreed-upon amount of damages on the breach of contract claim, but it denied Aime's argument for damages flowing from the breach of the implied covenant for a number of reasons. Lost profits damages were not "reasonably certain" at the time of the breach, and Aime did not, in fact, subsequently meet the buyback deadline. Also, Aime's argument essentially positioned a breach of the covenant as an independent tort claim, which Virginia law prohibits—the claim is effectively a claim for breach of contract. However, finding the outcome "troubling," the district court did award Aime $5,000 in nominal damages to recognize that "[Liberty Tax] acted in bad faith throughout its negotiations with [Aime]," whereas "[Aime] acted in good faith during the period of the extension by continuing to pursue and ultimately obtain the EFIN."

Aime filed a timely Rule 59(e) motion for reconsideration.[2] Aime argued that the damages he sought under the breach of the implied covenant were not "lost profits"

---

[2] Aime labeled his motion as arising under Rule 54(b). Rule 54(b) provides for motions to reconsider interlocutory orders. The district court subsequently construed Aime's motion as arising under Rule 59(e) because the order at issue adjudicated all
(Continued)

expectation damages, as the district court had analyzed them, but rather were available under an equitable estoppel theory or as "disgorgement" damages. A few months later, while that motion was still pending, Aime filed a motion to amend the judgment under Rule 59(e) based on newly discovered evidence. Aime argued that new evidence of unpaid rent that Liberty Tax was liable for came to light based on a New York state court judgment against him.

The district court denied Aime's motion for reconsideration seeking the original damages sum based on equitable principles. The court found the arguments procedurally barred—as they had not been raised in the course of litigation and conflicted with this Court's mandate—as well as substantively meritless. However, the district court granted Aime's motion to increase the judgment based on new evidence. It held that the damages would have been awarded as compensatory relief if they had been identified during trial, and that they were, in fact, newly discovered. Accordingly, the court amended the damages award upwards by $49,465.94.

Both parties now appeal the district court's post-remand rulings to this Court.

---

outstanding claims in the case and resulted in a final judgment. Rule 59(e) motions are governed by a significantly higher standard than Rule 54(b) motions. *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) ("[Rule 54(b)] Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to [Rule 59(e)] motions for reconsideration of a final judgment.").

## II.

Aime appeals from the district court's denial of his post-judgment motion for reconsideration. Liberty Tax appeals from the district court's grant of Aime's motion to amend the judgment based on newly discovered evidence. Liberty Tax also challenges the award of $5,000 in nominal damages on Aime's claim for breach of the duty of good faith.

We review a district court's decision on a motion for reconsideration for abuse of discretion. *Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 246 (4th Cir. 2020). We review conclusions of law regarding the availability and calculation of damages de novo, and we review any relevant factual findings for clear error. *Simms v. United States*, 839 F.3d 364, 368 (4th Cir. 2016).

## A.

Aime contends that the district court mistakenly believed its hands were tied as to potential remedies in the post-remand damages proceedings. The court erred, he reasons, when it concluded that disgorgement damages were unavailable. He urges us to find instead that disgorgement was the proper remedy for Liberty Tax's breach of the good faith duty, lest Liberty Tax be rewarded for its dishonest dealings. But, as unfortunate as the outcome may be for Aime, his theory fails on two separate bases.

First, after years of litigation, a bench trial, an appeal to this Court, and a damages proceeding upon remand, Aime raised disgorgement for the first time in a motion to

9

reconsider a final judgment.[3]  Reconsideration is an "extraordinary remedy," to be used

"sparingly," available on only three grounds:  1) an intervening change in controlling law;

2) previously unavailable evidence; or 3) to correct a clear error of law or prevent manifest

injustice.  *Pac. Ins. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).  "Rule

59(e) motions may not be used, however, to raise arguments which could have been raised

prior to the issuance of the judgment, nor may they be used to argue a case under a novel

legal theory that the party had the ability to address in the first instance."  *Id.*  Yet that is

exactly how Aime used his motion here.  The district court properly concluded that Aime

could have raised his disgorgement theory during the litigation, before this Court on appeal,

or during the damages proceeding upon remand, but failed to do so.  Therefore, on this

basis alone, the district court properly denied the motion.

Aime protests that "[e]ven if [he] did not use the word" disgorgement "earlier in the

litigation,"[4] the district court was nevertheless obliged to grant his motion based on Rule

54(c).  That rule provides that the district court "should grant the relief to which each party

---

[3] Aime's motion also raised equitable estoppel as a basis for reconsidering the judgment.  That argument was essentially the same claim for future lost profits that the district court had considered and rejected at the post-remand damages proceeding.  The district court rejected the theory as improperly raised and incorrect under Virginia law.  Aime apparently concedes the issue, as his brief on appeal does not refer to equitable estoppel.

[4] The issue is not merely a failure to use certain terminology, however.  Aime had argued previously that he was entitled to lost profits as expectation damages.  That is a different form of relief that would give rise to different damages.  Aime acknowledged as much, calculating the amount of the potential disgorgement damages as less than the total lost profits.  Aime improperly used a motion for reconsideration to raise a new damages theory for the first time.

is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. Proc. 54(c). Aime overstates its purview. Rule 54(c) clarifies that "the relief to which a claimant is entitled is not limited to the relief it requested in its original demand for judgment." *Gilbane Bldg. Co. v. Fed. Reserve Bank*, 80 F.3d 895, 901 (4th Cir. 1996). This means only that the demand for relief included in the pleading does not control the options available to the district court—the entire pleading does. *See Minyard Enters., Inc. v. Southeastern Chem. & Solvent Co.*, 184 F.3d 373, 386 (4th Cir. 1999); *see also Cioffe v. Morris*, 676 F.2d 539, 541 (11th Cir. 1982) ("Rule 54(c) creates no entitlement to relief based on issues not squarely presented and litigated at trial."). Therefore, the rule has no bearing on Aime's failure to raise his argument prior to a motion for reconsideration. If Rule 54(c) required differently, then Rule 59(e)'s stringent standard would be meaningless.

Second, Aime's argument for disgorgement damages is precluded by the mandate rule. The mandate rule is a "more powerful version" of the law of the case doctrine. *Invention Submissions Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005). It requires a lower court to faithfully apply the mandate of a higher court, which is controlling as to all matters within its scope. *Doe v. Chao*, 511 F.3d 461, 464–65 (4th Cir. 2007). The rule has two dimensions: "First, 'any issue conclusively decided by this court on the first appeal is not remanded,' and second, 'any issue that could have been but was not raised on appeal is waived and thus not remanded.'" *Id.* (quoting *United States v. Husband*, 312 F.3d 247, 250–51 (7th Cir. 2002)). Here, both aspects of the mandate rule preclude Aime's argument for disgorgement.

11

Aime's disgorgement theory was as follows: Liberty Tax breached the contract by acting in bad faith immediately after its consummation, and Aime was prevented from suing at that point only by Liberty Tax's deception, entitling him to disgorgement of Liberty Tax's subsequent ill-gotten profits from the franchises. But Aime's only contractual right to past profits from the franchises was an *option*, contingent on the necessary condition that Aime first satisfy his obligation to regain a valid EFIN by the May deadline. Aime did not do so, and this Court held that the buyback deadline was not validly extended, meaning that "Aime wasn't entitled to damages resulting from Liberty Tax's refusal to sell back his former franchises." *See JTH Tax I*, 744 F. App'x at 791–94. Aime could never have effected the option, so Liberty Tax's gains from the stores were not, in fact, "ill-gotten." Thus, because Aime's argument for disgorgement is based on "Liberty Tax's refusal to sell back his former franchises," it contradicts this Court's prior mandate. *See id.*

Moreover, as discussed above, Aime failed to raise his disgorgement argument to the district court during the litigation and to this Court on his previous appeal. The mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court." *Volvo Trademark Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007). Consequently, Aime's argument is procedurally barred by the mandate rule as well. *See id.* Aime responds that disgorgement did not "become relevant until remand" because previously, "Aime was awarded his full lost profits." But this argument is self-defeating. It amounts to a concession that Aime raised a new legal theory to obtain the same damages

12

that the district court and this Court denied him on his previous theory. "[U]nder the mandate rule[,] a remand proceeding is not the occasion for raising new arguments or legal theories." *Id.*

The district court did not err in concluding that the Rule 59(e) standard and the mandate rule precluded Aime's disgorgement theory.[5]

B.

Next, Liberty Tax argues that the district court abused its discretion by granting Aime's motion to increase the damages award based on newly discovered evidence. It contends that Aime could have discovered the underlying evidence at issue during the litigation, meaning Rule 59(e)'s standard was not satisfied.

Where a motion for reconsideration is based on purportedly newly discovered evidence, the evidence must not have been discoverable prior to judgment by the exercise of reasonable due diligence. *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989). The moving party bears the burden of demonstrating that the evidence meets this requirement. *See id.*; *Pac. Ins.*, 148 F.3d at 403 ("[T]he party 'must produce a legitimate justification for not presenting the evidence during the earlier proceeding.'") (quoting *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996)).

Here, upon remand, the parties stipulated to the damages that flowed from Liberty Tax's breach of contract, including costs of unpaid rent. Then, in his post-judgment

---

[5] Further, Liberty Tax also argues, as the district court found below, that Aime's argument for disgorgement damages fails on the merits under Virginia law. Because we find that Aime's argument fails under Rule 59(e)'s standard and was barred by the mandate rule, we do not reach this question.

motion, Aime raised a July 2018 state court judgment against him for unpaid rent on one of the franchise leases—the "Burnside property"—to justify an increase of the damages award. Aime submitted a declaration regarding his initial discovery of the judgment in 2019, stating that he "could not have included the . . . judgment in my damage claim at trial in this case because it did not exist at the time." Relying solely on Aime's declaration, the district court granted the motion to amend the judgment. That decision amounts to error.

As the district court correctly noted, the judgment itself was not the "newly discovered evidence" at issue, given that it did not exist prior to the trial in January 2017. Rather, the question was whether the underlying unpaid rent qualified as newly discovered evidence that was not previously available to Aime during the litigation. However, even after making this correct observation, the district court's analysis nevertheless considered only the judgment itself. It found that Aime met his burden under Rule 59(e) by submitting in his declaration "that he only discovered the default judgment entered against him on March 30, 2019." But that statement does not provide any "legitimate justification" for not discovering and presenting the evidence of the *unpaid rent* during the litigation. *See Pac. Ins.*, 148 F.3d at 403. Indeed, the declaration attests only to discovery of the judgment and makes no reference to Aime's knowledge of—or attempts at discovering—evidence of the underlying unpaid rent. Therefore, the district court erred by concluding that Aime had met his burden to show that the evidence qualified as newly discovered. *See id.*; *Boryan*, 884 F.2d at 771.

On appeal, Aime argues, effectively, that this error was harmless. He contends that he did, in fact, exercise due diligence, and the unpaid rent on the Burnside property was

not discoverable because Liberty Tax failed to disclose it. Aime cites only one example of an affirmative act constituting his reasonable due diligence: a discovery request that "Liberty Tax produce all documents regarding rent at the stores for 2016," to which Liberty never produced any documents in response.

This single request is an insufficient showing of due diligence to satisfy Rule 59(e)'s standard as an "extraordinary" remedy. Aime was aware of signs that Liberty Tax was not paying rent. *See Boryan*, 884 F.2d at 772 (affirming denial of Rule 59(e) motion where "sufficient indicia of the [evidence at issue] existed . . . such that it could have been discovered with due diligence prior to judgment"). One of Aime's allegations from the outset of the litigation was Liberty Tax's general failure to pay rent on the franchise properties as promised. Further, Liberty Tax points to a June 2016 state court action Aime filed regarding their dispute. In that complaint, Aime alleged "upon information and belief" that Liberty Tax was not paying rent on the Burnside property specifically. Thus, Aime believed rent was not being paid on the Burnside Property long before he received the default judgment in March 2019, the only fact attested to in his Rule 59(e) declaration.[6]

---

[6] Aime responds that "[w]hen the [state] complaint was filed, there was no specific evidence that Liberty Tax had not paid rent at the Burnside Property," and he believed his allegation only because "Liberty Tax had failed to pay rent at other stores." That argument hardly helps him, though. The question under Rule 59(e) is whether the evidence *existed* during the litigation, not whether Aime possessed it. *Boryan*, 884 F.2d at 772. Given his acknowledgment that he believed that Liberty Tax was not paying the Burnside property's rent as early as June 2016, Aime then only had to use the tools of discovery to verify that belief. Because he did not put forward evidence showing that he attempted to do so, Aime cannot satisfy his burden to justify an amendment of the judgment.

15

Yet despite this awareness, Aime apparently did not use the tools of discovery to challenge Liberty Tax's non-responsiveness.[7] He did not seek an adverse inference on that basis. He did not contact the landlords directly—regarding the leases that he had secured and that remained in his name—to inquire whether rent had been paid. Nor did he ask any witnesses in depositions or at trial about Liberty Tax's rent payments on the Burnside property, or lack thereof. These omissions undermine Aime's purported due diligence.

In sum, in the declaration and now on appeal, Aime does not show he exercised reasonable due diligence during the three years of litigation to discover and present evidence of unpaid rent on the Burnside property. Therefore, the district court erred by granting Aime's Rule 59(e) motion to increase the judgment.

## C.

Finally, Liberty Tax challenges the district court's award of $5,000 in nominal damages on Aime's breach of the implied covenant of good faith claim.

After trial, the district court entered judgment for Aime on two counts: "Count 1" for breach of contract and "Count 2" for breach of the implied covenant. The court then awarded Aime compensatory damages without distinguishing between the two separate counts. On appeal, this Court vacated the lost profits portion of the award and remanded

---

[7] Albeit, the usefulness of this approach would have depended on whether the discovery request at issue actually required Liberty Tax to produce any response indicating its *failure* to pay rent. Liberty Tax argues that it did not. It argues it produced no documents in response because Aime's request referred to documents concerning the *payment* of rent. Liberty Tax was not, in fact, paying rent, and so there were no responsive documents to produce. Aime may have been able to raise a meritorious challenge to this arguably duplicitous interpretation. But the time and place to pursue its fairness was before trial at the district court.

for recalculation. Then, upon remand, Aime emphasized that he obtained a successful judgment on these two separate counts. He argued that the lost profits damages vacated by this Court were linked to Count 1, breach of contract, but that he remained entitled to the same damages via Count 2, breach of the implied covenant. The district court rejected Aime's argument, but found the outcome "troubling," given Liberty Tax's bad faith conduct throughout its dealings with Aime. Therefore, the district court awarded Aime $5,000 in nominal damages on his claim for breach of the good faith duty. While sympathetic to the district court's concerns about rewarding Liberty Tax's deception in this case, we find error in the award of separate damages to remedy the breach of good faith.

As the district court correctly noted, Virginia law does not recognize an independent cause of action based on the implied covenant; rather, a breach of the duty of good faith constitutes a breach of contract and therefore gives rise only to a breach of contract claim. *See Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 385 (Va. 1996).[8] Further, nominal damages are only available under Virginia law when compensatory

---

[8] *Charles E. Brauer Co.* concerned the duty of good faith imposed by the U.C.C. 466 S.E.2d at 385. However, Virginia law regards the U.C.C. duty and the common law duty as governed by the same rules. *See Ward's Equip. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997). The rule from *Charles E. Brauer Co.* has been widely applied in common law cases by the lower courts in Virginia. *See, e.g.*, *Carr v. Fed. Nat'l Mortg. Ass'n*, 92 Va. Cir. 472, 2013 WL 12237855, at *4 (2013) ("It is well-settled that Virginia law does not recognize an independent cause of action for breach of the implied warranty of good faith and fair dealing, but it does give rise to a breach of contract claim."); *S. Bank & Tr. Co. v. Woodhouse*, 92 Va. Cir. 402, 2016 WL 9527885, at *6 (2016) (collecting cases for the same); *see also Morris v. Wilmington Sav. Fund Soc'y*, 360 F. Supp. 3d 363, 369 (W.D. Va. 2018) ("Plaintiffs must bring [a breach of the implied covenant] claim as part of a count for breach of contract, rather than as an independent tort."); *Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460, 465 (E.D. Va. 2013) (same); *Goodrich Corp. v. BaySys Techs., LLC*, 873 F. Supp. 2d 736, 742 (E.D. Va. 2012) (same).

damages are unwarranted or unprovable. *Kerns v. Wells Fargo Bank, N.A.*, 818 S.E.2d 779, 785–86 (Va. 2018) ("Nominal damages are 'appropriate when there is a legal right [. . .] that has produced no actual, present loss of any kind or where . . . some injury has been done but the proof fails to show the amount.'") (quoting *Town & Country Props., Inc. v. Riggins*, 343 S.E.2d 356, 365 (Va. 1995)); *cf. Crist v. Metro. Fund, Inc.*, 343 S.E.2d 308, 311 (Va. 1986) (holding, in breach of contract case, that "we will affirm the judgment of the trial court denying compensatory damages but awarding nominal damages of $100" because "no actual damages can be recovered").

Here, Aime's purportedly separate claims for breach of contract and breach of the implied covenant were effectively one and the same. *See Charles E. Brauer Co.*, 466 S.E.2d at 385. Therefore, nominal damages were unavailable because Aime was awarded compensatory damages to remedy Liberty Tax's breach of contract, regardless of the finding that Liberty Tax also breached the contract by breaching the implied covenant. *See Kerns*, 818 S.E.2d at 785–86. The district court erred by awarding an additional $5,000 as nominal damages.

## III.

In sum, we affirm the district court's denial of Aime's motion for reconsideration of the judgment seeking disgorgement damages, and we reverse the district court's grant of Aime's motion to amend the judgment upwards based on newly discovered evidence and its award of nominal damages to remedy Liberty Tax's breach of the implied covenant.

18

Accordingly, we vacate the post-judgment increase in damages by $49,465.94 and the award of $5,000 in nominal damages from the damages sum and remand for recalculation.

*AFFIRMED IN PART, REVERSED AND VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*