**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-1691**

_____

BERKELEY COUNTY SCHOOL DISTRICT,

  Plaintiff – Appellee,

  v.

HUB INTERNATIONAL LIMITED; HUB INTERNATIONAL MIDWEST LIMITED,

  Defendants – Appellants,

  and

HUB INTERNATIONAL SOUTHEAST; KNAUFF INSURANCE AGENCY, INC.; STANLEY J. POKORNEY; SCOTT POKORNEY; BRANTLEY THOMAS,

  Defendants.

_____

Appeal from the United States District Court for the District of South Carolina, at Charleston.  David C. Norton, District Judge.  (2:18-cv-00151-DCN)

_____

Argued:  December 8, 2022                    Decided:  December 28, 2022

_____

Before GREGORY, Chief Judge, and KING and RUSHING, Circuit Judges.

_____

Vacated in part and remanded by unpublished opinion.  Judge Rushing wrote the opinion, in which Chief Judge Gregory and Judge King joined.

_____

**ARGUED:** Michael Gregory Pattillo, Jr., MOLOLAMKEN LLP, Washington, D.C., for Appellants. Phillip Donald Barber, RICHARD A. HARPOOTLIAN, P.A., Columbia, South Carolina, for Appellee. **ON BRIEF:** Christy Ford Allen, John A. Massalon, WILLS MASSALON & ALLEN LLC, Charleston, South Carolina; Thomas J. Wiegand, Chicago, Illinois, W. Alex Harris, MOLOLAMKEN LLP, New York, New York, for Appellants. Richard A. Harpootlian, RICHARD A. HARPOOTLIAN, P.A., Columbia, South Carolina; Joshua S. Whitley, SMYTH WHITLEY, LLC, Charleston, South Carolina; Jeffrey A. Breit, BREIT CANTO GRANA BUCKNER, PLLC, Virginia Beach, Virginia, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

We previously vacated the district court's denial of a motion to compel arbitration filed by defendants HUB International Ltd. and HUB International Midwest Ltd. (collectively, HUB) and remanded for a trial under Section 4 of the Federal Arbitration Act (FAA). *See Berkeley Cnty. Sch. Dist. v. HUB Int'l Ltd.*, 944 F.3d 225 (4th Cir. 2019). On remand, the district court held a bench trial and again denied HUB's motion to compel arbitration. HUB now appeals that denial in part, arguing that the district court misapplied the law-of-the-case doctrine. After considering the parties' arguments, we vacate the district court's order in part and remand for further proceedings.

I.

In January 2018, the Berkeley County School District[*] sued several defendants, including HUB, alleging claims arising from insurance policies and related consulting services that those defendants provided to Berkeley Schools. HUB moved to compel arbitration pursuant to brokerage service agreements (BSAs) dated in 2002, 2003, 2005, 2006, 2009, and 2011. Berkeley Schools opposed arbitration and filed an amended complaint, which remains the operative complaint in this action. The district court denied HUB's motion, and HUB appealed. We reversed, holding that the district court overlooked material factual disputes concerning this case's arbitrability, and remanded for the district court to conduct a trial under Section 4 of the FAA. *See Berkeley Cnty. Sch. Dist.*, 944 F.3d at 240–241; *see also* 9 U.S.C. § 4.

---

[*] The Berkeley County School Board of Trustees filed the original complaint. The amended complaint substituted the school district as the proper plaintiff.

3

On remand, the district court held a five-day bench trial. At trial, HUB disclaimed any further reliance on the arbitration clause in the 2005 BSA. Following the trial, the district court held there was no meeting of the minds between Berkeley Schools and HUB concerning the 2006, 2009, and 2011 BSAs because Berkeley Schools did not know about or assent to those agreements. As for the 2002 and 2003 BSAs, which are the subject of this appeal, the district court concluded that our prior decision precluded it from considering whether those agreements required the parties to arbitrate their dispute.

Now on appeal, HUB does not challenge the district court's ruling concerning the 2006, 2009, and 2011 BSAs. Rather, HUB argues only that the district court misapplied the law-of-the-case doctrine to bar evaluation of the 2002 and 2003 BSAs. We have jurisdiction to hear an immediate appeal from the denial of a motion to compel arbitration. *See* 9 U.S.C. § 16(a); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 635 (4th Cir. 2002). Following a bench trial, we review factual findings for clear error and legal conclusions de novo. *See Helton v. AT&T Inc.*, 709 F.3d 343, 350 (4th Cir. 2013); Fed. R. Civ. P. 52(a)(6), 81(a)(6)(B). We also review de novo whether the district court correctly interpreted and carried out our mandate on remand. *See Brown v. Nucor Corp.*, 785 F.3d 895, 901 (4th Cir. 2015); *Doe v. Chao*, 511 F.3d 461, 464 (4th Cir. 2007).

## II.

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–816 (1988); *see TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). Relatedly, when we remand a

4

case to the district court, that court must faithfully apply our mandate, which is "controlling as to matters within its compass." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939); *see JTH Tax, Inc. v. Aime*, 984 F.3d 284, 291 (4th Cir. 2021). On remand, the district court typically may not reevaluate "issues expressly or impliedly decided by the appellate court," nor may it "reconsider issues the parties failed to raise on appeal." *S. Atl. Ltd. P'ship of Tenn., LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004) (internal quotation marks omitted). But the law-of-the-case doctrine is not absolute. Among the doctrine's exceptions, a district court need not follow an earlier appellate decision if "a subsequent trial produces substantially different evidence." *TFWS, Inc.*, 572 F.3d at 191 (quoting *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)).

The district court correctly interpreted our prior decision in this case as it concerns the 2002 and 2003 BSAs. In that decision, "we accept[ed] as true the allegations of the Operative Complaint that relate[d] to the underlying dispute between the parties," *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 233 (internal quotation marks omitted), including the allegation that the disputed conduct "beg[an] in 2005 and continu[ed] into 2017," *id.* at 230. This led us to distinguish between "the formation of the four Agreements that fall within the period of the alleged claims (that is, 2005 to 2017)" and the "June 2002 and June 2003 Agreements and their Arbitration Clauses, both of which predate the alleged conduct underlying the Operative Complaint." *Id.* at 238. Regarding the former, we identified disputed material facts warranting a Section 4 trial. *See id.* at 238–241. But as to the latter, we concluded that because the 2002 and 2003 BSAs "predate the steering and kickback fraud scheme and conspiracy alleged in the" amended complaint, those agreements "could

5

not require Berkeley Schools to arbitrate any claims on the basis of conduct that began after" those agreements terminated. *Id.* at 241. Thus, "[a]t best," the 2002 and 2003 BSAs were relevant only "to questions of whether Berkeley Schools had knowledge of, or assented to, the" later BSAs. *Id.* We left those lingering issues "for the remand proceedings." *Id.* The district court's explanation of our decision closely tracked our opinion and correctly interpreted it.

Nevertheless, we agree with HUB that the district court was not bound by our prior decision about the 2002 and 2003 BSAs because the Section 4 trial produced substantially different evidence on that score. The record reveals evidence that some conduct at issue in this case may have occurred before 2005 and may thereby implicate the 2002 or 2003 BSA. For example, Berkeley Schools made specific allegations in its amended complaint and an attached exhibit that quantified the financial losses it incurred by paying for allegedly fraudulent or unnecessary insurance policies and consulting services. At the Section 4 trial, Berkeley Schools' Rule 30(b)(6) witness testified that part of those alleged damages arose from insurance policies procured or services provided while the 2003 BSA was still in effect. Such testimony undermines our previous reliance on Berkeley Schools' allegations that its injuries arose after the 2003 agreement terminated.

We therefore conclude that the district court erred by declining to consider new evidence implicating the 2002 and 2003 BSAs. Although the district court correctly interpreted our prior decision, it incorrectly concluded it was bound by the portion of our decision reasoning that the 2002 and 2003 BSAs predate the allegedly injurious conduct and so cannot require Berkeley Schools to arbitrate. Because the bench trial produced

6

substantially different evidence about the potential applicability of those agreements to the underlying dispute, the district court was freed from the law of the case and should have considered the new evidence. To be clear, we do not opine on what the new evidence shows. We also do not opine on whether it leads to the conclusion that Berkeley Schools must arbitrate all or part of this dispute, whether the parties must arbitrate the question of arbitrability, or whether Berkeley Schools in fact assented to the 2002 or 2003 BSA. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234 n.9. We leave these issues entirely to the district court to consider in the first instance.

Berkeley Schools argues that even if the district court should have considered new evidence relating to the 2002 and 2003 BSAs, a 2006 settlement agreement between the parties precludes HUB from asserting its arbitration rights under those BSAs. We disagree. The 2006 settlement resolved a dispute over a 2005 request for proposals (RFP) that Berkeley Schools published and later withdrew. The settlement agreement's dispute resolution procedures apply only to "any suit, action or proceeding arising out of or relating *to this Agreement*." J.A. 139 (emphasis added). Berkeley Schools' allegations in this case do not arise from the RFP dispute or the subsequent settlement. And Berkeley Schools identifies nothing in the settlement agreement that bars HUB from asserting the arbitration clauses in the 2002 and 2003 BSAs to disputes within their scope. We therefore conclude that the settlement agreement does not foreclose reliance on the arbitration clauses in the 2002 and 2003 BSAs and this matter must be returned to the district court for further proceedings.

7

III.

Because HUB challenged only the district court's conclusions concerning the 2002 and 2003 BSAs, we vacate only the portions of the district court's order addressing those agreements.  The district court's conclusion that the 2006, 2009, and 2011 BSAs do not require arbitration stands, and HUB remains bound by its waiver of any reliance on the 2005 BSA.  We remand for further proceedings consistent with this opinion.

*VACATED IN PART AND REMANDED*